804 F.2d 1325
 25 ERC 1193, 55 USLW 2294, 17 Envtl.
L. Rep. 20,372
 Paul J. MRAZ and Sally K. Mraz, as Directors and Trustees of
the property and assets of Galaxy Chemicals, Inc.,
and Paul J. Mraz, individually, Appellees,
v.
CANADIAN UNIVERSAL INSURANCE COMPANY, LIMITED, Appellant,
and
American Universal Insurance Company, Defendant,
and
Aetna Casualty & Surety Co., and the Maryland Casualty
Company, Amici Curiae.
 No. 85-2399.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 3, 1986.
Decided Nov. 4, 1986.
Rehearing and Rehearing En Banc Denied Dec. 18, 1986.
 
 Hartman J. Miller (Rollins, Smalkin, Richards & Mackie, Baltimore, Md., on brief), for appellant.
 Thomas W. Brunner, Washington, D.C. (Steven C. Kahn, Laura A. Foggan, Piper & Marbury, John D. Cole, Baltimore, Md., Richard P. Oatman, Hartford, Conn., on brief), for amici curiae.
 Robert S. Faron (William T. Bennett, Barnett & Alagia, Washington, D.C., on brief), for appellees.
 Before ERVIN, CHAPMAN and WILKINSON, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 This case is related to United States v. Bissell, another case in the U.S. District Court for the District of Maryland, in which the United States and the State of Maryland have sued Paul and Sally Mraz and others under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Sec. 9601 et seq. (1982 & Supp. II 1984) (CERCLA), to recover the costs of removing hazardous wastes that Galaxy Chemicals, Inc., buried in 1969. Paul and Sally Mraz brought this action seeking a declaratory judgment that Galaxy's former insurer, Canadian Universal Insurance Co., Ltd., has a duty to defend and indemnify them in Bissell. Following a bench trial, the court held that Canadian Universal has a duty to defend the plaintiffs, 616 F.Supp. 1173.
 
 
 2
 Canadian Universal appeals, arguing multiple reasons for reversing the district court's judgment. Three issues merit our discussion: (1) whether the Bissell complaint alleges an "occurrence" within the meaning of the policy; (2) whether the Bissell plaintiffs claim property damages; and (3) whether Canadian Universal has been released from liability. We reverse.
 
 
 3
 * In 1960, Paul J. Mraz formed Galaxy Chemicals, Inc., to operate a solvent recycling plant. He and his wife Sally controlled the corporation. In 1966, Galaxy purchased insurance from Canadian Universal Insurance Co., Ltd. The various limited-coverage insurance policies in effect over the next four years also covered Paul and Sally Mraz individually for actions taken within the scope of their responsibilities. Canadian Universal cancelled all coverage on December 31, 1969. Only policy NGA 32839, which was in effect from January 1, 1969, to January 1, 1970, is involved in this action.
 
 
 4
 In August 1969, due to complaints of odors emanating from Galaxy's plant site and certain related lawsuits, Galaxy contracted to have approximately 1300 barrels containing chemical wastes moved from the plant site and buried a few miles away in a clay-lined pit located on property known as the Leslie site. The arrangements for the disposal were made with the involvement and cooperation of state and county health department officials.
 
 
 5
 Following the passage of CERCLA, the Environmental Protection Agency and the State of Maryland investigated the Leslie site. On September 27, 1982, following the investigation, EPA informed Mraz that the buried drums were hazardous and in violation of the law. It sought to have Galaxy clean up the condition or pay the expense of the clean up. When this was not done, EPA and Maryland removed the buried drums, disposed of the contaminated soil, treated contaminated water, and took other clean-up action. Thereafter, in 1983, the United States and Maryland filed the Bissell action in the U.S. District Court for the District of Maryland, seeking to recover their clean-up and removal costs plus additional administrative fees, costs, and interest. The complaint alleges environmental damage to the Leslie site and the nearby area and injury to the health of residents near the site who were exposed to and came in contact with alleged hazardous substances. Paul and Sally Mraz, as directors and trustees of the property and assets of Galaxy, and Paul Mraz individually were among the defendants named.
 
 
 6
 Mraz sought coverage under the 1969 liability policy, but Canadian Universal refused to defend or indemnify Galaxy. Paul and Sally Mraz, as directors and trustees of the property and assets of Galaxy, and Paul J. Mraz individually filed this action against Canadian Universal in state court, seeking a declaratory judgment that Canadian Universal has a duty to defend and indemnify them. Canadian Universal removed the action to federal court on the basis of diversity of citizenship. Following a bench trial, the court found that the allegations in Bissell and the facts that might be offered to prove those allegations potentially fell within the scope of the policy and held that Canadian Universal has a duty to defend the plaintiffs. This appeal has followed. Aetna Casualty & Surety Company and Maryland Casualty Company have filed a brief as amici curiae in support of Canadian Universal.
 
 II
 
 7
 Canadian Universal's duty to defend Galaxy is determined from the terms of the insurance policy and the allegations of the Bissell complaint. Galaxy's insurance policy contained the following provision:
 
 
 8
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 
 Coverage A. bodily injury or
 Coverage B. property damage
 
 9
 to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....
 
 
 10
 Canadian Universal argues that it has no duty to defend in Bissell because the Bissell complaint does not allege either that there was an "occurrence" within the meaning of the policy or that the plaintiffs suffered a loss of property damage. We will consider each of these arguments separately.
 
 
 11
 * The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." (emphasis added). Canadian Universal argues that the Bissell complaint does not allege any damage to the government plaintiffs occurring before 1981 so that there is no allegation of property damage during the policy period. We agree.
 
 
 12
 We note initially that the complaint does allege the existence of property damage. Under the policy, property damage is "injury to or destruction of tangible property." The complaint alleges that the release of hazardous substances resulted in "strong odors in the air and discolored runoff into a nearby creek" and that cleanup action included the removal of "approximately 2500 tons of contaminated soil and sludges [and the] treatment of over 100,000 gallons of contaminated water." Third Amended Complaint, paragraphs 34, 35 (emphasis added). Yet a release that results in property damage is not an occurrence within the meaning of the policy unless it results in damage during the policy period, which was January 1, 1969, through January 1, 1970.
 
 
 13
 Canadian Universal argues that the timing of the damage is determined by the time that the damage was discovered, not the time that the wrongful act was committed. The district court ruled that the date of discovery does not determine the date of the occurrence and relied on CPS Chemical Co. v. Continental Insurance Co., 199 N.J.Super. 558, 489 A.2d 1265 (Law Div.1984). CPS Chemical considered the duty of two insurance companies to provide a defense in a waste disposal action; one company's policy had taken effect as the other's policy expired. Although the New Jersey court held that the date of discovery of the damage was not controlling, its decision has been reversed, CPS Chemical Co. v. Continental Insurance Co., 203 N.J.Super. 15, 495 A.2d 886 (App.Div.1985). One of the grounds for reversal was that "there is also a serious question of when the damage occurred during the respective policy periods." Id. 495 A.2d at 889. Further, its holding as to the existence of an occurrence is distinguishable because the definition of occurrence in those policies did not include the critical phrase "during the policy period." By omitting the time element, those policies leave out the phrase whose presence here is the basis for Canadian Universal's argument.
 
 
 14
 The general rule is that "[t]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged." United States Fidelity & Guaranty Co. v. American Insurance Co., 169 Ind.App. 1, 345 N.E.2d 267, 270 (1976). Often, these cases involve a wrongful act that produces no harm for a period of time and then suddenly manifests itself in a burst of damage. See, e.g., Travelers Insurance Co. v. C.J. Gayfer's & Co., 366 So.2d 1199, 1202 (Fla.App.1979) (faulty roof drainage system finally leaks); Singsaas v. Diederich, 238 N.W.2d 878, 880 (Minn.1976) (collapse of negligently installed manlift); Peerless Insurance Co. v. Clough, 105 N.H. 76, 193 A.2d 444, 446 (1963) (fire in negligently built chimney).
 
 
 15
 There are situations, however, in which the existence or scope of damage remains concealed or uncertain for a period of time even though damage is occurring. The leakage of hazardous wastes as in this case is a clear example. Determining exactly when damage begins can be difficult, if not impossible. In such cases we believe that the better rule is that the occurrence is deemed to take place when the injuries first manifest themselves. See Appalachian Insurance Co. v. Liberty Mutual Insurance Co., 676 F.2d 56, 62 (3d Cir.1982); cf. Bartholomew v. Appalachian Insurance Co., 655 F.2d 27, 28 (1st Cir.1981) (when the defect takes place or is discovered); Aetna Casualty & Surety Co. v. PPG Industries, Inc., 554 F.Supp. 290, 294 (D.Ariz.1983) (coverage is based upon the time the damage was discovered).
 
 
 16
 Therefore, we hold that in hazardous waste burial cases such as this one, the occurrence is judged by the time at which the leakage and damage are first discovered. Applying that rule, it is quite clear that the Bissell complaint does not allege an occurrence. The Third Amended Complaint states:
 
 
 17
 34. In late 1981 and early 1982 preliminary investigation by the State of Maryland and the United States Environmental Protection Agency ("EPA"), including sampling and analysis, established that hazardous substances had been released and threatened to continue to be released from the Site into the air, water and soil ... as a result of the prior disposal of Galaxy's wastes at the Site.
 
 
 18
 In addition, the complaint alleged that defendants Montgomery Bros., Inc., and Pemil, Inc., who became owners in April 1981, were the owners and/or operators of the site at the time of the release and threatened release. See Third Amended Complaint, paragraphs 33, 49. Nothing in the complaint indicates that the release was discovered any earlier than 1981, over eleven years after Canadian Universal went off the risk. Thus, we find that there was no occurrence as defined in this policy.
 
 B
 
 19
 Canadian Universal and amici argue that, even if the loss were caused by an occurrence, there would be no duty to defend because the United States and the State of Maryland have not alleged that they suffered a loss of property damages. The district court observed that the Bissell complaint alleged that the release caused contamination of soil and water resulting in the need for the cleanup and therefore concluded that the complaint alleged property damage. The problem is that the court failed to consider whether the alleged contamination of the Leslie site was the injury for which the governments sought relief or merely a factual predicate of the cost reimbursement claim. Reviewing the complaint, we find the latter to be correct.
 
 
 20
 To determine the nature of the relief sought in Bissell, we must refer initially to the language of CERCLA, which states that the enumerated persons may be found liable for:
 
 
 21
 (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 
 
 22
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
 
 
 23
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
 
 
 24
 42 U.S.C. Sec. 9607(a)(4) (1982). Since the United States and Maryland are the only plaintiffs, subsection (B) is not relevant here.
 
 
 25
 The United States and Maryland have not sought recovery for damage to natural resources under subsection (C). For purposes of CERCLA, the term natural resources is limited to "resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... [,] any State or local government, or any foreign government." Id. Sec. 9601(16). While the complaint does allege that property damage occurred, there are no allegations that plaintiffs sustained any property damage or that they even have the requisite interest in the Leslie site. The allegations of property damage set forth the basis for the governments' response costs, see 42 U.S.C. Sec. 9604(a)(1) (1982), and do not constitute part of the governments' request for relief.
 
 
 26
 Even the most cursory reading of the Bissell complaint makes it clear that the United States and Maryland have claimed only the response costs for the Leslie site. The first allegation states:
 
 
 27
 1. This is a civil action ... for recovery of the costs incurred by the United States and the State of Maryland for investigation, cleanup, removal, monitoring and other response actions taken in connection with the release and threatened release of hazardous substances....
 
 
 28
 The complaint goes on to allege that the costs incurred by the United States and Maryland constitute response costs under CERCLA and that CERCLA imposes liability for those costs on the named defendants. The prayer for relief requests judgment "for all costs of response" incurred by the plaintiffs; for attorneys' fees, expenses, and costs; and for other appropriate relief.
 
 
 29
 Response costs are not themselves property damages. An examination of CERCLA's provisions defining response, Sec. 9601(23)-(25), and authorizing the President to take response action, Sec. 9604, makes it clear that property damage and response are independent; for example, the government may take response action in cases of a substantial threat of a release of hazardous substances before any damage ever occurs. One cannot equate response costs with "injury to or destruction of tangible property," this policy's definition of property damage. Instead, response costs are an economic loss. Therefore, the Bissell complaint does not allege a loss of property damage.
 
 III
 
 30
 Finally, Canadian Universal argues that it has been released from liability. In 1970, a lawsuit pending against Galaxy due to fumes generated by its plant resulted in judgment against it. When Galaxy asserted that Canadian Universal was liable for the amounts of the judgments, Canadian Universal filed an action seeking a declaratory judgment that the claim was not covered by the policy. This action was eventually settled in September 1973. The settlement contained a clause by which Galaxy, its successors, and assigns released Canadian Universal from every claim that Galaxy
 
 
 31
 as the result of the judgments against it ... had or might have or might claim to have against [Canadian Universal] by reason thereof or by reason of any other manner, matter, cause or thing whatsoever before the day of the date of these presents.
 
 
 32
 Canadian Universal contends that the release was intended to cover any liability from any action from any plaintiff--in essence, a buy-out.
 
 
 33
 The district court held that while the language was broad, "the release was no broader than the events and circumstances which were the subject of the state court personal injury suits." We believe that the district judge's interpretation is in clear conflict with the plain language. Were the scope of the release intended to be limited to the subject of those suits, the parties would have ended the release clause with the phrase "by reason thereof." Yet the parties continued with the language "or by reason of any other manner, matter, cause or thing whatsoever before the day of the date of these presents." The subject of this suit is certainly within the scope of "any other manner, matter, cause or thing whatsoever" and thus is covered by the release clause.
 
 
 34
 For each of the foregoing reasons, the judgment of the district court is reversed.
 
 
 35
 REVERSED.
 
 ERVIN, Circuit Judge, concurring:
 
 36
 I concur in the result reached by my colleagues.
 
 
 37
 In Part III of his opinion, Judge Chapman concludes that Canadian Universal has been released from all liability by the terms of its settlement agreement with Galaxy. I am in complete agreement with this view, and in my opinion, this holding alone would fully support the reversal of the judgment of the district court.
 
 
 38
 Since the cogent reasoning of Part III fully justifies the result reached, I believe that it is neither necessary nor appropriate to decide the issues dealt with in Parts II A and B, and I therefore disassociate myself from those portions of the opinion.
 
 
 39
 I concur in the decision to reverse the district court's judgment, but I do so solely for the reasons set forth in Part III of Judge Chapman's opinion.