**AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation, Plaintiff,**

v.

**GULF RESOURCES & CHEMICAL CORPORATION, a Delaware corporation; the Bunker Hill Company, an Idaho corporation; Pintlar Corporation, a Delaware corporation, Defendants.**

**CONTINENTAL RE-INSURANCE CORPORATION, a California corporation; Pacific Insurance Company, a California corporation; Fidelity & Casualty Company of New York, a New York corporation, Plaintiffs,**

v.

**GULF RESOURCES & CHEMICAL CORPORATION, a Delaware corporation; and Pintlar Corporation, a Delaware corporation, Defendants.**

Civ. Nos. 87-3043, 87-3082.

United States District Court, D. Idaho.

March 31, 1989.

R.B. Kading, Jr., Warren E. Jones, Scott D. Hess, Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, Idaho, for Aetna Cas. & Sur. Co.

Robert T. Wetherell, Quane Smith Howard & Hull, Boise, Idaho, for Continental Re–Insurance Corp.

Stephen W. Greiner, Richard Mancino, Willkie, Farr & Gallagher, New York City, Fred M. Gibler, Evans, Keane, Koontz, Boyd, Simko & Ripley, Kellogg, Idaho, for Gulf Resources & Chemical Corp. and Pintlar Corp.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

### I.  FACTS & PROCEDURE

On October 18, 1984, the Environmental Protection Agency (EPA) formally notified Defendant Gulf Resources & Chemical Corporation (Gulf) that Gulf had been tentatively identified as a "potential responsible party" (PRP) under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.*  Because of this, Gulf became subject to a claim by the EPA that Gulf was responsible for the costs of cleaning up the Bunker Hill site.[1]

On January 8, 1985, Plaintiff Aetna Casualty & Surety Company (Aetna) was sent a letter from Gulf advising Aetna of the notice from EPA.  On January 14, 1985, William Boyd, one of Gulf's attorneys in this matter, sent a letter to Aetna tendering the defense of EPA's claim to Aetna. Gulf and Defendant Pintlar Corporation (Pintlar) have also tendered defense of the EPA claim to Plaintiffs Continental Re–Insurance Corporation, Pacific Insurance Company, and Fidelity & Casualty Company of New York (collectively known as the Continental Group).

In two separate actions, one by Aetna and the other by the Continental Group, the plaintiff insurers seek declarations that they owe no duties of defense or indemnification to defendants.

Aetna issued five policies of "comprehensive general liability" (CGL) insurance naming Gulf as the insured party.  The effective dates of these policies cover the period from November 1, 1967, to April 15, 1972. The Continental Group plaintiffs issued seven CGL policies covering the period from January 1, 1972, to April 15, 1978.

Currently before the court are motions for summary judgment brought by plaintiffs in both cases.  Because of the similarity of the issues involved, the motions were consolidated for hearing.

### II.  ANALYSIS

#### A.  *Motions for Summary Judgment*

■ While Aetna's motion raises several issues, the only issue raised by the Conti-

---

1. The Bunker Hill site near Kellogg, Idaho, is the site of a mining and smelting operation which operated from about the turn of the century to 1982.  While defendants owned the facilities during this period, they no longer own it.

nental Group is that of coverage for response costs, discussed in subsection 2(a), below. However, when there are no genuine issues of material fact, the court may grant summary judgment where appropriate, even if the grounds for granting it differ from those urged by the movant. 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 2725 (1983). The only limitation here is that the court must use caution to insure that the non-moving party is not unfairly surprised by the court's reliance on grounds other than those urged by the movant. *Id.* During the oral argument on these motions, the parties fully discussed the application of Aetna's arguments to the Continental Group policies. Because the facts relevant to these motions are uncontroverted, and the facts are substantially the same as to both Aetna and the Continental Group, if entry of summary judgment as to one is appropriate, it is appropriate as to both. Under liability insurance policies, there are generally two issues: the insurer's duty to defend the insured against covered claims, and the insurer's duty to provide indemnification for such claims.

### 1. Duty to Defend.

■ At this time, EPA has not filed any civil action against defendants. However, the EPA has been conducting extensive studies to determine the appropriate actions to clean up the Bunker Hill site. Because no complaint has been filed, Aetna claims that the duty to defend has not been triggered.

The Aetna and Continental Group policies in question state that the insurer has the duty to defend any "suit" against the insured on account of covered property damage. This court has held that the duty to defend is triggered by the filing of a complaint which creates a potential for covered liability. *State v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986).

Defendants argue that the duty to defend can exist prior to filing of a civil complaint. They claim this is particularly true in this case. They point out that the identification of them as PRPs carries more serious consequences than, for example, a demand letter between private parties. For example, they argue that they can be fined for failure to cooperate in the EPA's process of planning the cleanup. Also, if the EPA ultimately recovers the costs of response, defendants' failure to settle prior to commencement of litigation by the EPA could increase the amount of recovery against defendants. Thus, they claim that the notice from the EPA triggered the duty to defend.

As defendants point out, to the typical business person there might be little practical difference between the EPA's enforcement procedures and civil litigation. Certainly, coverage for costs incurred in such proceedings would be a reasonable term in a policy. Under the doctrine of insurance policy construction known as the "reasonable expectations" doctrine, a court might very well construe the policies in this manner. However, the reasonable expectations doctrine is not applied in Idaho. Instead, Idaho law looks to the plain meaning of the policy language. *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979).

The policies at issue state that the duty to defend is triggered by a "suit"—not "claim," not "administrative proceeding," but suit. Since no civil complaint has been filed against defendants by EPA, there is no suit. Thus, under the plain meaning of the policy terms, no duty to defend has been triggered.

### 2. Duty to Indemnify.

In this case, there are two general types of claim by the EPA against Gulf which for which the insurers have been asked to provide indemnity. CERCLA provides, in pertinent part:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

. . . .

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . . .

(4) . . . shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; [and]

. . . .

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release. . . .

42 U.S.C.S. § 9607(a) (Law.Co-op.1982 & Supp.1988). Thus, the two types of damages for which the insurers might be called upon to provide indemnity are cleanup or response costs and resource damages. None of the policies involved provide coverage for either type of damages.

### (a) *Response Costs—42 U.S.C. § 9607(a)(4)(A).*

The coverage language of each of the policies at issue states that, "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence. . . ." Memorandum in Support of Motion for Summary Judgment, Civil No. 87–3043, filed July 8, 1988, at 4–5; Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Civil No. 87–3082, filed Sept. 29, 1988, at 3.

Under the policies, an "occurrence" is an accident or injurious exposure to conditions which causes personal injury or property damage during the policy period. In other words, for coverage to exist, there must be an "occurrence" which results in property damage.

All plaintiffs join in the argument that the sums sought by the EPA are not "damages" as that term is used in the policies at issue. They claim that the "damages" covered by the policies are legal damages, not equitable claims, such as restitution of response costs. The federal circuit courts which have addressed this issue have agreed. *Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co.*, 842 F.2d 977 (8th Cir.) (en banc), *cert. denied,*

— U.S. ——, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). Plaintiffs note that their policies did not promise to pay all sums which the insured is required to pay as a result of property damage. Rather, plaintiffs agreed to pay all sums payable "as damages." Thus, the damages they agreed to provide indemnity for must be something less than all sums for which the insureds become liable. They argue that reading this language to cover equitable as well as legal theories of recovery would have the effect of requiring them to pay all sums.

■ While this court finds plaintiffs' arguments as to coverage for equitable recovery persuasive, there is a more basic reason for denying coverage. Plaintiffs argue that there is no "property damage" in this case. The policies at issue only cover damages on account of "property damage."

The Fourth Circuit has held that response costs do not result from property damage, as the term is used in CGL policies. *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325 (4th Cir.1986). The *Mraz* court noted that CERCLA permits the government to take response actions even before there has been a release of hazardous material in some cases. *Id.* at 1329.

Even where, as here, response costs are claimed after hazardous substances have been released, there is still no requirement of property damage in order for response cost liability to exist. To establish liability under 42 U.S.C. § 9607(a)(4)(A) for prior owners such as defendants, the government need only prove that disposal of hazardous substances occurred while the facility in question was under the ownership of the prior owner. 42 U.S.C. § 9607(a)(2). As the *Mraz* court noted, response costs and property damage are handled separately under CERCLA. *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d at 1329. Because response cost liability is not based upon the existence of damage to persons or property, there is no coverage under the policies in question for such liability.

Finally, plaintiffs have given persuasive policy-based reasons for holding that response costs are not covered. They analogize liability for response costs to the cost of complying with health and safety regulations. While such costs are mandated by government agencies, plaintiffs state, correctly, that CGL policies do not cover such costs. Such costs are merely part of the cost of doing business. This reasoning is applicable here. As previously noted, liability for response costs is not dependant in any way on the occurrence of property damage. Under CERCLA, the rule is simply that he who releases hazardous substances must pay for the cleanup. In other words, response costs are simply a government-imposed cost of doing business for firms which release hazardous substances. Such costs are not covered by CGL policies, any more than the cost of installing fire extinguishers as required by the Occupational Safety and Health Administration would be covered.[2]

### (b) Resource Damage—42 U.S.C. § 9607(a)(4)(C).

■ Unlike response cost liability, resource damage liability does require that there be damage resulting from releases of hazardous substances. Thus, there could very likely be coverage under a CGL policy for such damages. However, coverage for such liability is barred by issues of timing.

This court has already held that the Aetna and Continental Group policies only provide coverage when the property damage for which damages are sought and the cause of that damage both occurred during the policy period. *State v. Bunker Hill Co.*, 647 F.Supp. at 1070-71. This court has also held that damages under 42 U.S.C. § 9607(a)(4)(C) cannot be recovered for damage occurring prior to the enactment of CERCLA in 1980. *Id.* at 1069. The policies at issue all expired prior to 1980. Thus, the only resource damages which could be claimed arose after the policies expired. Because of this, this court has held that the policies in question do not provide coverage for resource damage claims. *Id.* at 1070-71. For this reason,

plaintiffs are under no duty to indemnify defendants for resource damages.

### (c) Ripeness.

■ Defendants argue that entry of declaratory judgments would not be proper at this time, because the issues are not fully ripe. For example, they argue that CERCLA may be amended to permit retroactive recovery for resource damages, or to provide for new theories of liability. It is true that this is a rapidly-developing area of law. However, speculation as to future legal developments will not justify delays in entering judgment where the facts in a case are ripe for decision. If it should happen that relevant changes in the law occur, defendants' proper remedy would be to seek modification of this court's judgment at that time.

### B. Aetna's Motion for Partial Summary Judgment

In this motion, Aetna seeks a ruling that Pintlar and Defendant The Bunker Hill Company (Bunker) are not insured parties under the Aetna policies. As Aetna points out, this court has already ruled that Pintlar and Bunker are not covered by the policies in *State v. Bunker Hill Co.*, Civil No. 83-3161 (D.Idaho April 14, 1986). Defendants here do not dispute this. However, they claim that the issue is not ripe, since only Gulf tendered defense of the EPA claim to Aetna.

This issue is unclear. The January 14, 1985, letter referred to William Boyd's "clients" tendering defense of the EPA claim to Aetna. Based on the plural form, and the fact that William Boyd's firm has been representing Bunker, which now goes by the name of Pintlar, in other environmental and insurance matters, the letter could reasonably be read to include the other defendants. Because Aetna's motion for summary judgment disposes of the case, it is unnecessary to decide this issue.

### III. CONCLUSION AND ORDER

Based on the foregoing, and the court being fully advised in the premises,

---

**2.** This court does not mean to imply that response costs are trivial. One of the crucial legal and business issues for years to come will be how to pay for environmental response costs. This court merely holds that CGL policies such as those here are not the answer.

IT IS HEREBY ORDERED that these cases, Civil No. 87–3043 and Civil No. 87–3082, should be, and hereby are, CONSOLIDATED for all purposes. Civil No. 87–3043 shall be designated the lead case.

IT IS FURTHER ORDERED plaintiff's motion for summary judgment in Civil No. 87–3043 should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment in Civil No. 87–3082 should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered in favor of plaintiffs in Civil No. 87–3043 and Civil No. 87–3082 as to both the duty to defend and the duty to indemnify, in accordance with this opinion.