915 F.2d 1565
 32 ERC 1182
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,
v.
FEDERATED MUTUAL INSURANCE COMPANY, Defendant-Appellant,
COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellee,
and
Wilma G. NEAL; Dorothy J. Smith, personal representative of
the estate of James L. Smith; Willard Oil
Company, Inc.; Meador Oil Co.; Ranger
Insurance Company, Defendants.
 No. 89-2822.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1990.
Decided Oct. 16, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Matthew J. Perry, Jr., District Judge. (CA-88-1496-0-7)
 Robert Mason Barrett, Holcombe, Bomar, Wynn, Cothran & Gunn, Spartanburg, S.C., (argued) for Appellant; William U. Gunn, Holcombe, Bomar, Wynn, Cothran & Gunn, Spartanburg, S.C., on brief.
 Charles Elford Carpenter, Jr., Richardson, Plowden, Grier & Howser, Columbia, S.C., Warner S. Fox, Freeman & Hawkins, Atlanta, Ga., (argued) for Appellees, William H. Hensel, Richardson, Plowden, Grier & Howser, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before DONALD RUSSELL and K.K. HALL, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 This is a declaratory judgment suit, filed by one insurer (Safeco) against two other insurers (Commercial Union and Federated Mutual) to resolve the question whether the policies issued by each in favor of Meador Oil Company (and its successor, Willard Oil Company) covered damages and clean-up expenses resulting from a leaking underground gasoline storage tank located at a county store in rural Union County, South Carolina.
 
 
 2
 There were two tanks involved: one was used to store regular gasoline and the other premium gasoline. In 1972, water was discovered in the tank in which regular gasoline was stored; so far as the record shows, no leakage was found in the tank in which premium gasoline was stored. When water was discovered in the tank, the operator of the store pumped out all the remaining gasoline in the tank and discontinued use of the tank. The owner of the store continued to purchase premium gasoline from Meador through April 1980, after which time the owner discontinued any deliveries of gasoline. Meador was insured under a general liability policy issued by Commercial Union for the period from February 17, 1977, to February 17, 1980; by Safeco from February 17, 1980, to January 1, 1983; and by Federated thereafter.
 
 
 3
 The controversy which is before us had its beginnings in 1986, when a water well was constructed on the property of a Mrs. Neal, which was located opposite the store where the gasoline tanks had been located. After her well had been in use a short time, Mrs. Neal discovered her well contained oil. The South Carolina Department of Health and Environmental Control (DHEC) in response to a complaint from Mrs. Neal confirmed the presence of petroleum in the ground water in the area. Mrs. Neal proceeded to sue Meador for damage to her property. DHEC also notified Meador (now Willard) that it intended to seek recovery for all costs of conducting studies of the site as well as potential costs in any possible clean-up of the site. The Neal suit was settled on behalf of Meador by Federated. The DHEC has as yet not filed suit for its possible claim for clean-up costs. The present declaratory judgment action was then begun by Safeco against Commercial Union and Federated to resolve any dispute between the respective insurers for the damages involved in Mrs. Neal's suit and in DHEC's possible action. Federated admitted liability and had settled the suit by Mrs. Neal. It claimed that both Safeco and Commercial Union were liable along with it and sought by cross-bill contribution from them for the settlement made by it with Mrs. Neal and for any subsequent clean-up costs. These were the issues posed in the district court.
 
 
 4
 It was the position of Safeco that there was no liability under its policy either to Mrs. Neal or DHEC because the contaminants from the storage tank was not an "occurrence" as defined in its policy, and that "property damage" did not cover the discharge of the gasoline since the events did not qualify as an "accident" within the meaning of its policies, especially since its policy expressly requires that the leakage be "sudden." Accordingly, it was under no obligation to contribute towards Federated's settlement with Mrs. Neal or any liability to DHEC for clean-up costs. Commercial Union denied liability on the ground that its policy was limited to "[a]ll sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence...." The word "occurrence" is defined in the policy to mean "an accident including continuous or repeated exposure, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Safeco alleged that since it had, therefore, no liability in the case under its policy, it, too, was not obligated to contribute to Federated's settlement.
 
 
 5
 Both Safeco and Commercial Union filed motions for summary judgment on several grounds, primarily on the ground that liability under their policies was triggered only for "occurrences" causing property damage during the effective time period of their policies and that no such occurrence occurred during the period their policies were in effect. The district court agreed with the position of Safeco and Commercial Union. It held that "[s]ince the Plaintiff Safeco and the Defendant Commercial Union provided insurance coverage to the defendants only up through 1983, and the contamination of the groundwater was not discovered until the well was drilled by Wilma Neal in 1986, the only reasonable conclusion which can therefore be reached by this court is that the 'occurrence' which trigger[ed] the liability coverage did not occur during the periods that Safeco and Commercial Union insured Willard and/or Meador." It relied on our decision in Mraz v. Canadian Universal Ins. Co., 804 F.2d 1325, 1328 (4th Cir.1986), in support of its decision.
 
 
 6
 Mraz was an action seeking recovery for injury to property for the storage of hazardous waste on the property under a policy similar to that involved here. The critical question in the case was the proper application of "occurrence" in the liability clause of the insured's policy. That is the precise question here. We held in that case that "occurrence [in such a policy] is judged by the time at which the leakage and damage are first discovered." The district judge found that this construction of the term was dispositive of this case, too.
 
 
 7
 Federated argues, however, that Mraz is distinguishable from this case on two grounds: (1) Mraz was decided under Maryland law whereas the controlling law is that of South Carolina, which is more liberal in the construction of insurance contracts than the Maryland courts; and (2) Mraz was decided under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Secs. 9601, et seq., which applies only to hazardous waste. So far as the first contention of Federal is concerned, we think such argument was answered in the subsequent case of Cincinnati Ins. Co. v. Milliken & Co., 857 F.2d 979, 980-81 (4th Cir.1988). In that case we said:
 
 
 8
 Armco and Mraz were decided under Maryland law. The meaning of Cincinnati's policy must be determined by application of South Carolina law. Nevertheless, the district court properly concluded that its decision should follow the reasoning of Armco and Mraz. We perceive no material distinctions between the South Carolina and Maryland laws in the construction and interpretation of insurance policies that should cause us to deviate from Armco and Mraz.
 
 
 9
 We are similarly not persuaded by Federated's second basis for distinguishing this case from Mraz. It is quite clear that the Mraz definition of "occurrence" as a provision in a liability insurance policy was not to be confined in application strictly to hazardous waste. The Court in that case was reaching its decision on "the general rule" for a definition of "occurrence" in a general liability policy. We are here concerned with a similar policy and a similar policy phrase and we agree with the district court that there was not during the life of either Safeco's or Commercial Union's coverage an "occurrence," as defined in the "general rule," as stated in Mraz and Cincinnati Ins. Co., triggering liability on the part of either.
 
 
 10
 We according affirm the judgment finding no liability on the part of Safeco or Commercial Union and denying contribution for any settlement Federated had effected with Mrs. Neal or for any subsequent clean-up costs on the reasoning and opinion of the district court against them.
 
 
 11
 AFFIRMED.