**ZECCO, INC., Plaintiff,**

v.

**The TRAVELERS, INC., Defendant.**

**Civil Action No. 96–10028–GAO.**

United States District Court,
D. Massachusetts.

Aug. 16, 1996.

John M. Edwards, Boston, MA, for plaintiff.

Mark D. Cahill, Karen D. Lane, Boston, MA, for defendant.

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

The plaintiff Zecco, Inc. ("Zecco"), seeks a declaration that the defendant The Travelers, Inc. ("Travelers") has a duty to defend against and provide indemnity for certain claims asserted against Zecco by the Marane Oil Company ("Marane") by means of a letter sent by Marane to Zecco in September, 1993. Zecco has moved for partial summary judgment on the question of whether the letter is equivalent to a "suit" as required to implicate Travelers' insurance obligations under the relevant policies. The Court denies the motion.

I

Most of the essential facts of the case are undisputed. Zecco, a subsidiary of Metcalf & Eddy Companies, Inc. ("Metcalf & Eddy"), is in the business of providing clients with environmental and waste disposal services. Travelers is an insurance company. For the periods of March 1, 1984 to March 1, 1985 and March 1, 1985 to April 1, 1985, Zecco purchased from Travelers two separate insurance policies, each of which stated in relevant part:

> [Travelers] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage ... caused by an occurrence, and [Travelers] shall have the right and duty to defend any *suit* against the Insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

Decl. of Francis X. Ferrara, Ex. A at 10, Ex. B at 11 (emphasis added).

On September 24, 1993, Zecco received a letter from Marane Oil Corporation, for whom Zecco had done work in 1984 at a convenience store that sold gasoline. The letter accused Zecco of causing "a 1000 gallon sudden and accidental release of petroleum products." Decl. of Francis X. Ferrara, Ex. C at 1. Marane noted in the letter that it had begun "taking necessary and appropriate environmental response actions at the Site" and that it viewed Zecco as a "poten-

tially responsible party ... liable to Marane for damages under M[ass].G[en].L. c[h]. 21E, strict liability and negligence." *Id.* In addition to setting out in some detail the factual basis of the accusation, Marane indicated that the letter served as its formal notification under Mass.Gen.L. ch. 21E, § 4A(a). *Id.* at 3–4.

Section 4A is a recently enacted legislative scheme designed to encourage parties to settle environmental liability suits without formal litigation proceedings. Section 4A(a) requires any person who desires to hold another party responsible for its own current or projected clean-up costs to send notice to the other of the potential claim. The notice must indicate what has happened, how much has been done or will be done with regard to the clean-up, how much the action has or is expected to cost, and what sort of contribution, reimbursement, or equitable share might be owed and on what theory that recovery is being sought. The party receiving notice must then respond within forty-five days, indicating whether it is willing to pay any contribution or reimbursement or to participate in the performance of the response action. Additionally, the respondent must state the legal and factual basis for its response and request any further information or documentation it might need to evaluate the claim more fully. Mass.Gen.L. ch. 21E, § 4A(a). The parties are then to undertake jointly, if either side requests, some form of alternative dispute resolution. Mass.Gen.L. ch. 21E, § 4A(b). Failure to comply with § 4A(a) or § 4A(b) exposes the notified party to liability for litigation costs and attorney's fees in a subsequent suit if the party is found liable as the claimant originally alleged. Mass.Gen.L. ch. 21E, § 4A(d).

On October 8, 1993, Metcalf & Eddy gave Travelers notice of the § 4A letter, advised Travelers that it was in the process of investigating the Marane matter and of selecting outside counsel, and called upon Travelers to assume the defense of the claim and to confirm its obligation to indemnify Zecco. Decl. of Francis X. Ferrara, Ex. D.

Travelers responded on November 24, 1993, with a denial of any defense obligation.

Specifically, Travelers noted that "no suit has been served on Zecco, Inc., nor has a document giving rise to the level of a suit in Massachusetts been sent to Zecco, Inc....." Decl. of Francis X. Ferrara, Ex. E at 2. Additionally, although negotiations between Zecco and Marane have apparently continued, Marane has not yet filed an action against Zecco in any state or federal court.

Zecco consequently brought the present declaratory judgment action in state court, asserting four separate counts against Travelers: Declaration of Zecco's right to a defense (Count I); Declaration of Zecco's right to indemnification (Count II); Breach of duty of good faith and fair dealing (Count III); Violations of Mass.Gen.L. ch. 176D and ch. 93A (Count IV). Travelers removed the case to this Court.

## II

Summary judgment is appropriate wherever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). The non-moving party, here Travelers, is entitled to all reasonable inferences that may be derived from the evidence submitted, and the evidence must be viewed in the light most favorable to it. *Woodman*, 51 F.3d at 1091. In this particular case, the facts are not at issue so much as the reasonable inferences to be drawn from them.

■ The insurance policies Travelers sold to Zecco require Travelers to defend Zecco against a "suit." Although it would be plausible to read that language as requiring that someone must have actually filed a complaint in a court against Zecco, *see, e.g., Aetna Casualty & Sur. Co. v. Gulf Resources & Chem. Corp.*, 709 F.Supp. 958, 960 (D.Idaho 1989), *rev'd*, 948 F.2d 1507 (9th Cir.1991), the Massachusetts Supreme Judicial Court ("SJC") has eschewed such literalism. *Hazen Paper Co. v. United States Fidelity and Guar. Co.*, 407 Mass. 689, 555 N.E.2d 576, 579 (1990). Rather, where an insured's fail-

ure to respond adequately to a pre-suit letter would significantly affect the insured's ability to defend itself in a subsequent action arising out of the same subject matter and is "substantially equivalent to the commencement of a lawsuit," the letter may be sufficient to invoke the insurer's defense obligations to the insured. *Id.*, 555 N.E.2d at 581.

In *Hazen Paper*, the United States Environmental Protection Agency ("EPA") and the Massachusetts Department of Environmental Quality Engineering ("DEQE") had each notified Hazen about certain potential liabilities surrounding a hazardous waste facility. In 1983, the EPA had informed Hazen by letter that it was a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-57, and that Hazen might be liable for certain expenses incurred or to be incurred in the clean-up of the facility. The letter, which asked for a written response within thirty days, stated that Hazen's participation in remedial action was voluntary but that the EPA would consider nothing less than a complete commitment to implementation of all measures needed to clean up the site as well as reimbursement of expenses already incurred. The EPA letter also asked for certain information regarding substances Hazen had sent to the site and advised it of criminal penalties for failure to furnish the requested information. *Hazen Paper*, 555 N.E.2d at 580. A few years later, the DEQE notified Hazen that it was seeking reimbursement pursuant to Mass.Gen.L. ch. 21E for the cost of removing 115 drums of hazardous material from the site. Hazen subsequently sued its insurer seeking, *inter alia*, a declaration that the insurer was obligated to defend it against these claims. *Hazen Paper*, 555 N.E.2d at 578.

After recognizing that the question was close, the SJC held that the EPA letter was tantamount to a suit and thus activated the insurer's duty to defend. The SJC noted that the EPA tended to rely on agency demands rather than lawsuits to encourage participation in remedial actions and that ignoring such demands is "dangerous for the

alleged polluter ... because they often result in dispositive, extrajudicial solutions." *Id.* at 581. The SJC thus distinguished such a request from a "conventional demand letter based on a personal injury claim." *Id.* The SJC also pointed out that the risk faced by such a party is substantial because liability would be joint and several and would not be based on fault. Accordingly, "[e]arly involvement in the settlement discussions is thus often crucial to protect one's interests." *Id.* Furthermore, "[a]ny court action by the EPA is limited to the administrative record, ... and judicial review considers only whether the EPA decision was arbitrary and capricious or otherwise not in accordance with law." *Id.* (internal quotations and citations omitted). In sum, "Hazen had no practical choice other than to respond actively to the letter." *Id.* at 582.

The SJC further held, however, that the state DEQE letter was *not* the equivalent of a suit. That letter claimed only the threat of a release from certain drums and did not state that there actually had been any damage. Consequently, "[t]he DEQE claim, as expressed in the letter, is not the equivalent of a suit." *Id.* at 580.

■ Although *Hazen Paper* does not state exactly what kinds of pre-suit letters will invoke a duty to defend, the decision does offer a number of indicators. First, a failure to comply with the letter should itself somehow alter the substantiality of the insured's liability, by making liability more likely or more devastating or by giving rise to some particular penalty. Second, the SJC noted that letters from governmental entities tend to have more severe consequences than those from private parties. Third, the SJC suggested that the letter's tone was relevant,

insofar as it indicated whether the offer to discuss matters was a polite invitation or one the recipient could not refuse. *Hazen Paper,* 555 N.E.2d at 580.

■ Analyzing the present case in light of these factors, the balance ultimately weighs in Traveler's favor. First, the pressure of the demand letter is not comparable to a lawsuit. Zecco's failure to participate certainly would have real consequences—it would become potentially liable for attorney's fees if it later lost at trial. And attorney's fees in these matters are often quite large. But that is not enough. EPA administrative actions under CERCLA are far more potent. *See Hazen Paper,* 555 N.E.2d at 581–82. Furthermore, Zecco's required pre-litigation participation so as to avoid the penalties under § 4A(a) is not particularly onerous. The response to receipt of a § 4A(a) notice letter and the good faith negotiations foreseen in § 4A(b) need not be too extensive, and the consequences for failing to respond or negotiate adequately—liability for attorney's fees—can be imposed only after an actual suit has been filed. The possibility of facing an attorney's fee award under such circumstances differs markedly in degree and kind from the liability that almost necessarily would follow from ignoring a PRP letter from the EPA.

Second, the distinction between a letter from the government and one from a private party is significant. To be sure, *Hazen Paper* does not expressly establish a distinction between governmental requests and private demand letters; that issue was not before the SJC. Yet it seems to be more than a coincidence that virtually every case discussing the issue involves an express threat from some federal or state agency.[1] *See, e.g.,*

---

1. Zecco has pointed to *Colonial Gas Co. v. Aetna Casualty & Sur. Co.,* 823 F.Supp. 975 (D.Mass. 1993), as an example of a case in which a private demand constituted the legal equivalent of a suit. In *Colonial Gas,* Colonial sought coverage for payments it had made to a trust fund established by the Massachusetts Department of Public Health to meet the requests of homeowners to remove certain insulation Colonial had installed in the claimants' homes. *Id.* at 978. Leaving aside the fact that *Colonial Gas* concerned coverage questions rather than a duty to defend, Colonial had paid money in response to a request for contribution from the Department of Public Health in the course of formal administrative proceedings in which Colonial's liability depended solely on whether it (as opposed to another company) had installed the insulation. *Id.* at 978–80. The distinctions between *Colonial Gas* and the present case, not to mention the fact that the ultimate demand for money did in fact come through a governmental agency, render Zecco's reliance on this case unavailing. *Colonial Gas* is also the only exception Zecco has identified and the only one the Court has been able to locate.

*Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 738 (1st Cir.1990) (citing cases); *Hazen Paper*, 555 N.E.2d at 580 n. 2 (citing cases). It is also noteworthy that in a similar case, the Michigan Supreme Court, after citing *Hazen Paper* favorably and holding that an EPA PRP letter could be a "suit," took pains to explain that its "opinion should in no way be viewed as intimating that every request for relief should be considered the initiation of a suit that the insurers are obliged to defend. Rather, our determination on this issue is made primarily based on the unique aspects of CERCLA actions and the authority given to EPA under the statute." *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864 (1994); *see also Aetna Casualty and Sur. Co. v. Pintlar*, 948 F.2d 1507, 1516–17 (9th Cir. 1991); *Ryan*, 916 F.2d at 738 (noting that almost all cases "require, at a bare minimum, some showing of *probable* and *imminent* governmental action as a condition precedent to coverage") (emphasis in original).

As to the third factor, the tone of the demand, evidence regarding the relationship between the parties is not particularly enlightening.[2] On the one hand, the letter suggests a working relationship between Zecco and Marane. On the other hand, Marane does unequivocally take an initial and necessary step toward filing a civil action against Zecco. The submitted evidence does not on its face support one side or the other. Viewing it in the light most favorable to Travelers for the purposes of Zecco's summary judgment motion, however, the Court can draw the inference that the relationship between Zecco and Marane was less than fully adversarial.

An additional consideration weighing in Travelers' favor is that the *Hazen Paper* Court was carving an exception out of a rule that limited a duty to defend a "suit" to actual civil actions filed in a court. The SJC said that its allowing that exception was a "close call." This Court is accordingly reluctant to push the exception farther than the SJC has. The failure to respond to the EPA's PRP letter in *Hazen Paper* was equivalent to ignoring a suit filed by the EPA. Zecco's failure to respond here would not have exposed it to similarly drastic consequences, and the consequences that would follow could not occur until a suit was actually filed.

The Court recognizes that § 4A is designed to encourage parties to settle disputes out of court and that forcing insurers to participate as early as possible would foster that policy.[3] *Cf. Aetna v. Pintlar*, 948 F.2d at 1517 ("Moreover, if the receipt of a PRP notice is held not to trigger the duty to defend under [comprehensive general liability] policies, then insureds might be inhibited from cooperation with the EPA in order to invite the filing of a formal complaint."). That policy interest notwithstanding, a § 4A demand letter is simply too analogous to others that might be issued pre-suit under Massachusetts law without triggering defense obligations for the Court to accept Zecco's argument. *Compare* Mass.Gen.L. ch. 93A, § 9. *Hazen Paper* carefully avoided opening the door that far.

## III

Finally, although Travelers has not formally moved for summary judgment on the duty-to-defend question, the Court sees no reason

---

2. The parties disagree about what evidence matters in assessing the letters. Travelers argues that the Court should consider all the circumstances surrounding the Marane letter while Zecco insists, citing *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. 316, 458 N.E.2d 338 (1983), *review denied*, 391 Mass. 1102, 459 N.E.2d 826 (1984), that nothing except the letter itself is relevant. The Court agrees with Travelers. *Sterilite* concerned a coverage dispute arising from a complaint in a filed law suit. Here, the inquiry is looking for the "substantial equivalent" to that situation. Certainly under a traditional "duty to defend" analysis the Court would determine whether a duty had arisen by relying

solely on allegations of the complaint. But given the inherent fuzziness presented when a court attempts to discover whether a document is the substantial equivalent of a suit, it makes far less sense to base the determination solely on a document which, on its face, is not a suit.

3. It appears that the Massachusetts legislature vacillated on exactly how much it wanted to push parties toward pre-litigation settlement. *See* Harry E. Manasewich, *21E Amendment A 'Backdoor' Mandate to Mediate?, Massachusetts Lawyers Weekly*, Oct. 30, 1995, at B5.

why it would not be appropriate to grant judgment on Count I in Travelers' favor. *See Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 33 (1st Cir.1991). Given the Court's conclusion that the § 4A demand letter is not a "suit" within the *Hazen Paper* rule, there appears to be no possibility that Zecco can show that Travelers owes it a duty to defend.[4] Additionally, applying the well-established principle that the duty to defend is broader than the duty to indemnify, there would be no duty to indemnify at this point either. *See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 545 N.E.2d 1156, 1158 (1989); *see also Ryan*, 916 F.2d at 743 (New York law). The additional counts of the complaint all depend on these two assertions and would therefore fail as well.[5]

Travelers has not moved for summary judgment, however, and there may be some reason not apparent why it should not be entered in Travelers' favor. Accordingly, the Court will grant Zecco twenty-one days from the entry of this order to file a memorandum opposing the entry of summary judgment in Travelers' favor. If Zecco declines to file anything, summary judgment for Travelers will be entered at that time.

For the foregoing reasons, Zecco's motion for partial summary judgment is DENIED.

SO ORDERED.

---

**4.** In looking at the issue from this perspective, the Court notes that it considers the third factor, the adversarial nature of Zecco's and Marane's relationship, as counting in Zecco's favor. Even so, the balance tips against Zecco's argument.

**5.** With regard to the claims under ch. 93A and ch. 176D in Count IV, the Court notes that the essentially unprecedented nature of the defense and coverage claims pressed by Zecco probably would itself require summary judgment for Zecco on these claims. *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 610 N.E.2d 912, 916–17 (1993).