John M. Kapral, Kapral & D'Amico, P.C., Worcester, MA, for George Rudnick, Leonard Rudnick.

Rosanna Sattler, Joseph P. Crimmins, Posternak, Blankstein & Lund, Boston, MA, for Hospital Mortgage Group, Inc., Maurice Wiener, Lee Gray, Franklin Knobel.

**George RUDNICK, Individually and George Rudnick and Leonard Rudnick, as Trustees of Mt. Leonard Realty, Plaintiffs,**

v.

**HOSPITAL MORTGAGE GROUP, INC., and Maurice Wiener, Lee Gray, Franklin Knobel and Carmela Cerado as Trustees of Transco Realty Trust, Defendants.**

**Civil Action No. 96–10772–WGY.**

United States District Court, D. Massachusetts.

Dec. 20, 1996.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

George Rudnick, individually, and with Leonard Rudnick, as trustees of Mt. Leonard Realty Trust (collectively "Rudnick") commenced this action against Hospital Mortgage, Inc. and Maurice Wiener, Lee Gray, Franklin Knobel and Carmela Cerado, as Trustees of Transco Realty Trust (collectively the "Hospital"), to recover for damages caused by the Hospital's failure to disclose certain underground oil storage tanks on property purchased by Rudnick. Count III of the Complaint seeks reimbursement for the environmental clean-up costs incurred by Rudnick under Mass.Gen.L. ch. 21E, § 5, the Massachusetts Oil and Hazardous Material Release Prevention Act (the "Act"). The Hospital has moved to dismiss Count III on the ground that Rudnick's failure to comply with the pre-suit notification procedure out-

lined in section 4A of the Act constitutes a jurisdictional bar which prevents this Court from adjudicating the merits of Rudnick's chapter 21E reimbursement claim.

## I. STATEMENT OF FACTS

Insofar as relevant to the Hospital's motion, the Court gleans the following facts from the pleadings:

In 1980, George Rudnick purchased the property at 1202–1214 Washington Street, Stoughton, Massachusetts (the "Property") from the Hospital. Prior to the sale, the Hospital disclosed the existence of two underground oil storage tanks on the Property. In 1984, Rudnick transferred the Property to Mt. Leonard Realty Trust as a nominee. In 1993, Rudnick discovered a third oil storage tank on the Property. As this third tank was leaking, Rudnick undertook an environmental clean-up of the tank and its contents.

On July 11, 1995, by regular mail, Rudnick's attorney sent a letter to the Hospital demanding reimbursement of $59,427.47—the amount Rudnick expended to clean-up the seepage from the third oil tank. On April 12, 1996, Rudnick commenced this suit alleging, among other things, a violation of Massachusetts General Laws chapter 21E.

## II. DISCUSSION

According to the Hospital, this Court lacks subject matter jurisdiction over the chapter 21E claim because Rudnick failed to strictly comply with the notice requirements of section 4A(a) of the Act. In contrast, Rudnick asserts that its letter of July 11, 1995 serves as notice sufficient under section 4A(a) even though it is not technically exact. This Court must therefore decide whether Rudnick's defective notice bars its chapter 21E claim against the Hospital.

Massachusetts General Laws chapter 21E creates a private right of action for the release or threat of release of hazardous materials including oil. Mass.Gen.L. ch. 21E, § 1, et seq.[1] Section 4 of the Act provides that "[a]ny person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil ... shall be entitled to reimbursement ... for the reasonable costs of such response action." Mass.Gen.L. ch. 21E, § 4. In 1992, the Massachusetts legislature amended chapter 21E such that a claim for reimbursement for clean-up costs under section 4 is now "subject to" and must be "brought in accordance with, the procedures set forth in section four A." Mass.Gen.L. ch. 21E, § 4.

Section 4A(a) states:

Any person ... who has undertaken ... a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five *may* notify any person he reasonably believes is liable pursuant to section five that the response action has been taken ... and that the notifier requests the person to whom the notice is being sent ... [to make] reimbursement or pay its equitable share of the costs of such response action ...

Mass.Gen.L. ch. 21E, § 4A(a) (effective July 1, 1992) (emphasis added). Section 4A(a) also describes the requirements of such notice stating:

Said notice shall be sent by certified mail, return receipt requested, and shall (i) identify the person giving the notice and the relationship of that person to the site ... (ii) identify and describe the response action that has been ... undertaken, including the expected cost and the duration of the response action, and the nature and amount of actual or potential liability pursuant to the provisions of this chapter, (iii) describe with *particularity* the legal and factual basis for the notifier's claim that the person to whom the notice is being sent is liable *pursuant to section five,* and (iv) state said person's proposed contribution, reimbursement or equitable share of such liability pursuant to this section and rationale for such proposal.

---

**1.** Section 5 of the Act defines who is liable. Mass.Gen.L. ch. 21E, § 5. Upon this record, the Court need not, and does not, express any opinion upon whether the Hospital is a "liable person" within the meaning of the Act.

Mass.Gen.L. ch. 21E, § 4A(a)(i-iv) (emphasis added).[2] Under section 4A(c),

> Only after notice has been given and after the procedures described in this section have been carried out, *any person who has given notice pursuant to this section may commence a civil action* ...

Mass.Gen.L. ch. 21E, § 4A(c).

The interplay of sections 4A(a) and 4A(c) is the subject of some confusion. Read literally, the notice mechanism of section 4A(a) is optional. *See* Mass.Gen.L. ch. 21E, § 4A(a). The plain language of the statute indicates, however, that if a party opts to give notice, that party must follow the procedural niceties of section 4A(a) upon pain of finding the courthouse doors barred against them. *See* Mass.Gen.L. ch. 21E, § 4A(c). Under such an interpretation, what happens to those who proceed without giving notice? Are they exempted from the jurisdictional bar that trips up those who proffer defective notice? This conundrum has led one court to question whether the language of section 4A(a) may be mandatory when read in conjunction with section 4A(c). *See Power v. Wyman Gordon Co.*, 3 Mass.L.Rptr. 138, Civ. Action No. 93–1751, 1994 WL 731258, at *3 n. 3 (Mass.Super.Ct.1994) (holding that section 4A was inapplicable on other grounds).

Given the ambiguities in section 4A, this Court must interpret the statute by looking to the intent of the legislature and by reading the statute as a whole to produce internal consistency. *See Singer Friedlander Corp. v. State Lottery Comm'n*, 423 Mass. 562, 564–65, 670 N.E.2d 144 (1996) (quoting *Telesetsky v. Wight*, 395 Mass. 868, 872–73, 482 N.E.2d 818 [1985] ). Section 4A was "designed to encourage parties to settle environmental liability suits without formal litigation proceedings." *Zecco, Inc. v. The Travelers, Inc.*, 938 F.Supp. 65, 66 (D.Mass.1996). This policy is advanced by provisions that extend the limitations period for those providing notice in accordance with section 4A(a), *see* Mass.Gen.L. ch. 21E, § 11A(2), and that allow a court to grant attorneys' fees against a party who fails to respond to notice and negotiate

in good faith, *see* Mass.Gen.L. ch. 21E, § 4A(d)(1). Thus, section 4A serves the stated goals of the 1992 amendments—to "increas[e] the private sector's responsibility for timely site assessment and cleanup," Commonwealth of Massachusetts, *Fiscal Year 1993 Investments in Success: FRAMEWORK FOR GROWTH*, Budget Message, Volume I, at III–24 (Jan. 22, 1992), and to provide an incentive structure that makes it more efficient and considerably less risky to mediate outside of court, *see* Harry E. Manasewich, *21E Amendment A 'Backdoor' Mandate to Mediate?*, Mass.Law.Wkly., Oct. 30, 1995, at B5.

In applying this statutory framework, no legislative purpose is served by barring Rudnick's claim merely because he failed to give perfect notice. Rudnick gave actual notice of his potential claim and, in essence, made an attempt to resolve this matter short of a law suit. This Court holds that when a party gives such actual notice, section 4A(a) is not a jurisdictional bar to commencement of an action. At most, the admittedly defective notice may be insufficient to toll the statute of limitations, *see* Mass.Gen.L. ch. 21E, § 11A(2), or to provide a basis for awarding attorneys' fees, *see* Mass.Gen.L. ch. 21E, § 4A(d). This Court therefore rules that it has subject matter jurisdiction over Rudnick's chapter 21E claim.

## IV. CONCLUSION

For the reasons stated above, this Court hereby **DENIES** the motion to dismiss Count III of the Complaint.

---

**2.** It is undisputed that Rudnick's July 11, 1995 letter did not satisfy the technical notice require-ments of section section 4A(a).