AL SMITH BUICK CO., INC., D/B/A AL SMITH MAZDA v. MAZDA MOTOR OF AMERICA, INC., AND CARY AUTO INVESTORS COMPANY

No. COA95-814

(Filed 21 May 1996)

**1. Appeal and Error § 555 (NCI4th)— 1990 consent order— 1993 declaratory judgment—1990 consent order no longer applicable**

Plaintiff automobile dealer was not barred by a 1990 consent order between the parties whereby plaintiff agreed not to protest

AL SMITH BUICK CO. v. MAZDA MOTOR OF AMERICA

[122 N.C. App. 429 (1996)]

defendant's intention to establish an additional dealership in the area, since a 1993 declaratory ruling held that plaintiff was not barred from filing a protest so long as the intended new dealership was within plaintiff's relevant market area because a reasonable time had passed from the signing of the consent order and no new dealership had been built, and that ruling became the law of the case since defendant did not appeal therefrom.

**Am Jur 2d, Appellate Review §§ 605-613.**

**Erroneous decision as law of the case on subsequent appellate review. 87 ALR2d 271.**

2. **Automobiles and Other Vehicles § 181 (NCI4th)— new dealership—relevant market area—method of determining population—Commissioner's error**

The Commissioner of Motor Vehicles erred in concluding that the "relevant market area," as that term is used in N.C.G.S. § 20-286(13b), required the counting of the entire population in a census tract when only a portion of that tract is located within a designated radius of the proposed site of a new motor vehicle dealership.

**Am Jur 2d, Automobiles and Highway Traffic §§ 394, 395; Private Franchise Contracts § 581.**

**Validity, construction, and application of state statutes regulating dealings between automobile manufacturers, dealers, and franchisees. 82 ALR4th 624.**

Appeal by Al Smith Buick Co., Inc., d/b/a Al Smith Mazda from order filed 4 May 1995 in Wake County Superior Court by Judge Stafford G. Bullock. Heard in the Court of Appeals 17 April 1996.

*Johnson, Mercer, Hearn & Vinegar, PLLC, by Richard J. Vinegar and Shawn D. Mercer, for appellant Al Smith Buick Co., Inc. d/b/a Al Smith Mazda.*

*Smith Helms Mulliss & Moore, L.L.P., by James L. Gale and Mary M. Dillon, for appellee Mazda Motor of America, Inc.*

*Moore & Van Allen, PLLC, by David E. Fox and Robert A. Meynardie, for intervenor Cary Auto Investors Company.*

**AL SMITH BUICK CO. v. MAZDA MOTOR OF AMERICA**

[122 N.C. App. 429 (1996)]

GREENE, Judge.

Al Smith Buick Co., Inc., d/b/a Al Smith Mazda (Al Smith) appeals from the trial court's order filed 4 May 1995, which affirmed the order of the Commissioner of the North Carolina Division of Motor Vehicles (Commissioner) which authorized Mazda Motor of America, Inc. (Mazda) to establish a dealership in Cary, North Carolina.

On 5 March 1990, Mazda notified Al Smith, pursuant to N.C. Gen. Stat. § 20-305(5), of its intent to enter a franchise agreement, establishing a new Mazda dealership in Cary, North Carolina. Al Smith filed a petition protesting the new dealership with the Commissioner on 30 March 1990, pursuant to N.C. Gen. Stat. § 20-305(5). On 12 July 1990, Al Smith and Mazda entered a consent order settling Al Smith's protest petition. The consent order provided that:

> A. . . . Al Smith Buick agrees that Mazda and/or Mazda's designated representative or authorized dealers may commence at any time prior to July 1, 1991, any and all pre-opening activities and preparations relating to the new dealership, including but not limited to, the construction of the new dealership facilities and advertising relating to the new dealership.
>
> B. Al Smith Buick will not file any further administrative protest or lawsuit or initiate any further administrative or legal proceeding pertaining to or arising from the pre-opening activities and preparations or the establishment of the new dealership and will not oppose in any other way the pre-opening activities and preparations or the establishment of the new dealership.
>
> C. Mazda is hereby authorized to establish the Cary, North Carolina dealership pursuant to the terms of this Consent Order.

Because Mazda had not "obtained a license from the Commissioner at the relevant site . . . or actually commenced operations" there, Al Smith filed a request for a declaratory ruling with the Commissioner on 7 July 1993 requesting the Commissioner to determine whether, "in light of the given state of facts," Mazda must provide notice to Al Smith and "afford Al Smith the opportunity to file a petition with the Commissioner protesting the establishment of said dealership and requesting a hearing before the Commissioner at which it will be determined whether good cause currently exists for the establishment of such dealership."

The Commissioner ruled on 16 August 1993 that the 1990 consent order "ceased to be effective after a reasonable period of time had elapsed during which time the proposed Cary dealership was not constructed or licensed by the North Carolina Division of Motor Vehicles and no Mazda vehicles were sold at said facility." The Commissioner then stated that a "reasonable period" is two years and a reasonable period of time had expired by 7 July 1993. The Commissioner then ruled:

> 5. The 1990 determination, which was entered with the consent of both Al Smith and Mazda, does not bar Al Smith from initiating the present request for a declaratory ruling or from filing a protest before the Commissioner to Mazda's intention to establish an additional dealership under G.S. 20-305(5) based upon the given state of facts presented above so long as said dealership has Al Smith within its relevant market area.

Mazda appeared and presented argument at the hearing for declaratory judgment, was served with a copy of the declaratory ruling and did not appeal from that ruling.

On 15 December 1993, Al Smith received a new notice that Mazda intended to establish a new dealership in Cary, which Al Smith considered its "relevant market area," and Al Smith filed a protest petition with the Commissioner on 12 January 1994. On 29 August 1994, the Commissioner determined that the 1993 declaratory ruling

> provided that any determination made by the Commissioner in the July, 1990 Consent Order could not bind the Commissioner for more than a reasonable time and that a reasonable time had expired since the Consent Order was entered. The request for declaratory ruling did not request a finding that, and the declaratory ruling did not provide that, the separate contractual undertakings between Al Smith and Mazda expired after this reasonable time.

Accordingly, the Commissioner stated that the 1990 Consent Order precluded Al Smith from "pursu[ing] further legal challenges to the establishment of Mazda's Cary dealership." The Commissioner also concluded that "[i]f Al Smith is not within the relevant market area, Mazda is entitled to have the protest proceeding dismissed on this separate and independent ground" because Al Smith would have no standing to bring this protest. It is not disputed that Al Smith is "located more than 10 miles from" the site of the proposed dealership.

The Commissioner concluded that the "proper procedure under N.C. Gen. Stat. § 20-286(13b)" for determining "relevant market area" is to:

   i) identify the location of the proposed site;

   ii) identify all United States census tracts wholly or partially within a ten-mile radius from the proposed dealership site;

   iii) determine the total population for each such census tract as determined in accordance with the most recent population update of NPDC or a similar recognized source; and

   iv) to accumulate the population.

The Commissioner further stated in his conclusion that "[t]he statutory directive to accumulate population directs that the entire population of all tracts wholly or partially within a ten-mile radius of the dealership be added together." Finally the Commissioner concluded that when properly measuring population in the ten mile radius of the proposed new dealership, the population exceeds 250,000 and that Al Smith is, therefore, "located outside the relevant market area of the proposed Cary Mazda dealership" and "lacks standing to challenge" the proposed dealership.

---

The issues are (I) whether the 1993 declaratory ruling permits Al Smith to file a protest with the Commissioner with regard to Mazda's intention to establish an additional motor vehicle dealership within Al Smith's market area; and if so, (II) whether the determination of the "relevant market area," as that term is used in N.C. Gen. Stat. § 20-286(13b), requires the counting of the entire population in a census tract when only a portion of that tract is located within a designated radius of the proposed site of the additional new motor vehicle dealership.

Because both issues present questions of law, our review is *de novo.* N.C.G.S. § 20-305.3 (1993) (review and appeal pursuant to Chapter 150B); N.C.G.S. § 150B-51(b) (1995); *Williams v. North Carolina Dept. of Economic and Community Dev.,* 119 N.C. App. 535, 539, 458 S.E.2d 750, 753 (1995).

I

**[1]** Mazda argues that Al Smith is barred by the 1990 consent order from contesting the establishment of a new Mazda dealership in Cary. We disagree. The continued viability of the consent order was addressed in the 1993 declaratory ruling. That ruling held that Al

Smith was not barred from "filing a protest before the Commissioner to Mazda's intention to establish an additional dealership under G.S. 20-305(5) . . . so long as said dealership has Al Smith within its relevant market area." Mazda did not appeal from that ruling and cannot now complain about it. *See Poindexter v. Wachovia Bank & Trust Co.*, 258 N.C. 371, 375, 128 S.E.2d 867, 871 (1963) (declaratory ruling binding when there has been no exception by either party). Thus the law of this case is that the consent decree ceased to be effective because two years had expired after the signing of the consent decree and Mazda had not yet constructed the proposed dealership nor had it been licensed by the North Carolina Division of Motor Vehicles. The 1994 ruling of the Commissioner, therefore, that Al Smith was precluded from "pursu[ing] further legal challenges to the establishment of Mazda's Cary dealership" was error.

II

**[2]** The statutes relevant to this case provide that a car manufacturer may not enter a franchise agreement with a new dealership, if the new dealership lies within the relevant market area of an existing dealer who deals in the same "line make" without first notifying the Commissioner and the dealer in writing. N.C.G.S. § 20-305(5) (Supp. 1995). The existing dealer then has the right to a hearing, by the Commissioner, to determine whether "there is good cause" for an additional dealership. *Id.* At the time of Mazda's 1993 notice to Al Smith, "relevant market area" was defined as a ten mile radius if the "population in an area within a radius of 10 miles around the proposed site is 250,000" after determining population. N.C.G.S. § 20-286(13b) (1993). In measuring population:

> the most recent census by the U.S. Bureau of the Census or the most recent population update either from the National Planning Data Corporation or other similar recognized source shall be accumulated for all census tracts either wholly or partially within the relevant market area.

*Id.*

Al Smith argues that section 20-286(13b) "makes clear that partially included census tracts may not be ignored, not that population outside the [radius] must be counted as falling within the [radius]." In other words, only the population of a census tract within the relevant radius of the site is to be included in determining the population of the market area. Mazda, however, argues that "[s]ection 20-286(13b) mandates, simply and unambiguously, that the population shall be

'accumulated,' not . . . 'apportioned' " and that Al Smith's method involves apportioning population instead of accumulating population. In other words, the entire population of any census tract, if any part of it is within the relevant radius of the site, must be included in determining the population of the market area.

Both contentions are reasonable. The legislature has stated unequivocally that only the population "within" a relevant radius of the site is to be determined. N.C.G.S. § 20-286(13b)(a). At the same time, Mazda argues that the language in the statute can be read to state that in determining the population "within" the radius, the population *outside* the radius must be counted to the extent a census tract partially within the radius extends beyond that radius. N.C.G.S. § 20-286(13b). It is also, however, reasonable to read, as Al Smith suggests, the statute as stating that when a census tract lies partially outside the radius, the Commissioner is not to disregard that tract in its entirety but is to include the population of that portion of the census tract that lies within the radius.

When a statute contains an ambiguity, as this statute does, our Court must construe the statute to arrive at the intent of the legislature.[1] *Burgess v. Your House of Raleigh*, 326 N.C. 205, 215, 388 S.E.2d 134, 140 (1990). Legislative intent may be ascertained from amendments to the statute. *General Motors Corp. v. Kinlaw*, 78 N.C. App. 521, 524-25, 338 S.E.2d 114, 117-18 (1985). In 1995, the legislature enacted a bill entitled: "An Act to Clarify the Definition of the Term 'Relevant Market Area' in the Motor Vehicle Dealers and Manufacturers Licensing Law." 1995 N.C. Sess. Laws ch. 234, § 1. This act did not change any substantive language in section 20-286(13b), but inserted the following language at the end of subsection 13b:

> In accumulating population for this definition, block group and block level data shall be used to apportion the population of census tracts which are only partially within the relevant market area so that population outside of the applicable radius is not included in the count.

---

1. Even if we accept Mazda's argument that the statute stating how the population is to be counted is not ambiguous and requires the counting of the population in the entire census tract, even if partially outside the radius, this reading of the statute violates the manifest intent of the legislature, as revealed by the language requiring the determination of population "within" a relevant radius. Thus, we would be required to interpret and apply the statute consistent with the intent of the legislature. *See Mazda Motors v. Southwestern Motors*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979); 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.07 (5th ed. rev. vol. 1992).

N.C.G.S. § 20-286(13b) (Supp. 1995). Although the bill amending section 20-286(13b) states that it "does not affect litigation pending at the time of its enactment . . . portions of the amendment[] are [nevertheless] helpful in ascertaining the intent of the legislature in enacting the original version." *General Motors Corp.*, 78 N.C. App. at 524, 338 S.E.2d at 117. This new amendment plainly reveals the intent of the legislature to exclude population outside the designated radius and indicates an intent to clarify the earlier version of the statute. *See id.*; *see also Sykes v. Clayton, Comm'r of Revenue*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968) (title of bill is "a legislative declaration of the tenor and object of the Act"). Therefore, the pre-amendment version of section 20-286(13b) must be construed consistent with the 1995 amendment and population determined in accordance therewith.

Accordingly, the Commissioner erred in his conclusion to include population lying outside the ten mile radius when determining "relevant market area." This matter is remanded for a determination of the "relevant market area" using the proper method of measuring population.

Reversed and remanded.

Judges MARTIN, Mark D. and SMITH concur.