THE HOME INDEMNITY COMPANY, THE HOME INSURANCE COMPANY, AND CITY INSURANCE COMPANY, PLAINTIFFS v. HOECHST CELANESE CORPORATION; AETNA CASUALTY & SURETY COMPANY; AIU INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AMERICAN MOTORIST INSURANCE COMPANY; AMERICAN PROFESSIONALS INSURANCE COMPANY; AMERICAN RE-INSURANCE COMPANY; ASSOCIATED INTERNATIONAL INSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA; CALIFORNIA UNION INSURANCE COMPANY; CENTENNIAL INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYDS LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES; CERTAIN UNDERWRITING SYNDICATES OF THE ILLINOIS INSURANCE EXCHANGE; CERTAIN UNDERWRITING SYNDICATES OF THE INSURANCE EXCHANGE OF THE AMERICAS; CIGNA INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; COMMERCIAL UNION INSURANCE COMPANIES; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; CRUM & FORSTER INSURANCE COMPANY; EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; ERIC REINSURANCE COMPANY; EXCESS INSURANCE COMPANY, LIMITED; FEDERAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; FREMONT INDEMNITY INSURANCE COMPANY; GIBRALTAR CASUALTY COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO); HARBOR INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HIGHLANDS INSURANCE COMPANY; HUDSON INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; INTERNATIONAL SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; LUMBERMEN'S MUTUAL CASUALTY INSURANCE COMPANY; MEADOWS SYNDICATE, INC.; NATIONAL CASUALTY COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.; NEW ENGLAND INSURANCE COMPANY; NEW ENGLAND REINSURANCE COMPANY; NORTH RIVER INSURANCE COMPANY; NORTH STAR REINSURANCE CORPORATION; NORTHWESTERN NATIONAL CASUALTY COMPANY; NORTHWESTERN NATIONAL INSURANCE COMPANY; PACIFIC INSURANCE COMPANY; PROGRESSIVE AMERICAN INSURANCE COMPANY; PRUDENTIAL REINSURANCE COMPANY; ROYAL INDEMNITY COMPANY; SIGNAL INSUR-

ANCE COMPANY; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; STONEWALL INSURANCE COMPANY; TORTUGA CASUALTY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; TWIN CITY FIRE INSURANCE COMPANY; VIK RE SYNDICATE, INC., UNDERWRITERS REINSURANCE COMPANY; UNITED INSURANCE COMPANIES, INC.; X.L. INSURANCE COMPANY LIMITED; ZURICH INSURANCE COMPANY; Defendants

No. COA96-1435

(Filed 6 January 1998)

1. **Insurance § 895 (NCI4th)— general liability insurance— contamination discovered after termination—no coverage**

Under the discovery rule, coverage under general liability policies was not triggered by claims arising from environmental contamination where the leaching of contaminants occurred during the years in which the policies were in effect but the contamination damage was not discovered until after the policies expired.

2. **Insurance § 895 (NCI4th)— property damage—discovery rule**

The discovery rule mandates that for insurance purposes, property damage occurs when it is manifested or discovered.

Appeal by defendant Hoechst Celanese Corporation from order entered 28 August 1996 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 1996.

This appeal concerns insurance coverage for environmental contamination claims under four general liability policies in effect from 1972-76. The policies here were issued to Hoechst Celanese Corporation ("HCC") by The Home Indemnity Company ("Home"). Because the property in question is located in North Carolina, Home contends that G.S. 58-3-1 causes North Carolina law to apply. For purposes of this appeal, concerning only North Carolina sites, HCC does not contest that North Carolina law applies.

HCC has owned and operated a polyester manufacturing plant in Salisbury, North Carolina, since 1966. Pollutants generated in the normal course of operation have included glycol and Dowtherm. Glycol was disposed of at an on-site treatment plant from 1969 through 1974. HCC has also operated an on-site wastewater treatment plant since 1966. From 1966 through April 1990, the Salisbury plant also disposed

**HOME INDEMNITY CO. v. HOECHST CELANESE CORP.**

[128 N.C. App. 259 (1998)]

of its waste at a nearby off-site landfill known as the Needmore Road landfill.

HCC's manufacturing operations at the Salisbury plant and disposal of waste at the Needmore Road landfill caused degradation of soil and groundwater. Glycol and Dowtherm were among the constituent contaminants identified in the groundwater. On 28 April 1988, the State of North Carolina issued two notices of non-compliance to HCC concerning the contamination of groundwater beneath the Salisbury Plant and the Needmore Road landfill. On 6 April 1990, the United States Environmental Protection Agency ("EPA") issued an administrative order directing further cleanup and investigation of the Salisbury Plant site. HCC has also been operating under a state mandate to clean up the contamination at the Needmore Road landfill. HCC seeks to recover the costs of environmental investigation, remediation and cleanup, which aggregate over $30 million for expenses at the Salisbury Plant and over $15 million for expenses at the Needmore Road landfill.

HCC filed suit in New Jersey on 14 February 1989 seeking a determination that primary insurance policies issued by Home to HCC cover the claims. On 9 March 1989, Home filed this action in North Carolina seeking declaratory judgment on the same insurance policies and claims. Home named HCC as defendants, as well as all of HCC's primary and excess liability insurance carriers. In August 1989, this case was stayed to allow the New Jersey case to proceed, but the stay was lifted in December 1992.

On 15 March 1996, Home moved for partial summary judgment concerning claims arising from the site in Salisbury, North Carolina, which consists of the HCC plant in Salisbury, as well as the Needmore Road landfill. Following a hearing on 22 and 23 July 1996, partial summary judgment was entered in favor of Home on 28 August 1996. The trial court certified the issues for immediate appeal pursuant to G.S. 1A-1, Rule 54(b). HCC appealed on 20 September 1996. The parties to this appeal agree that the trial court granted summary judgment on the following grounds: (1) policies in effect from 1972 through 1976 are not triggered by claims arising from property damage that occurred during those years, because the contamination was not discovered until after the policies expired; and (2) the insurance policies contain pollution exclusions with exceptions for sudden and accidental releases which bar coverage for claims arising from the Salisbury site.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Richard T. Rice and Reid C. Adams, Jr., for plaintiff-appellee The Home Indemnity Company.*

*Lowenstein, Sandler, Kohl, Fisher & Boylan, by Michael Dore and David Field, for defendant-appellant Hoechst Celanese Corporation.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Irvin W. Hankins, III and Josephine H. Hicks, for defendant-appellant Hoechst Celanese Corporation.*

EAGLES, Judge.

[1] We first consider whether the trial court erred in granting partial summary judgment on the grounds that coverage under the policies was not triggered by claims arising from property damage that occurred during the years in which the policies were in effect, because the contamination was not discovered until after the policies expired.

[2] In *West American Ins. Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), *review allowed*, 330 N.C. 853, 413 S.E.2d 555, *review denied as improvidently granted*, 332 N.C. 479, 420 S.E.2d 826 (1992), this court applied the discovery rule to a property damage case. The discovery rule mandates that "for insurance purposes, property damage 'occurs' when it is manifested or discovered." *Id.* at 317, 409 S.E.2d at 695 (quoting *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325, 1328 (4th Cir. 1986).

HCC argues that the discovery rule outlined in *Tufco* should not control here. First, HCC argues that this case is distinguishable from *Tufco* because no "trigger of coverage" issue was presented in *Tufco*. HCC contends that the issue in *Tufco* was whether the policy's pollution exclusion applied, or whether the policy's completed operations coverage overrode the pollution exclusion. HCC argues that the *Tufco* court had to determine whether the property damage had occurred before the completion of work in order to determine whether the completed operations coverage would have applied. HCC also contends that the *Tufco* court had to resort to an artificial "occurrence" date, the date of discovery, because the actual occurrence date was unknown. In the instant case, HCC maintains that the forecast of evidence establishes that the occurrence at issue took place over a period of time during the coverage period. Second, HCC asserts that

the *Tufco* decision is based on both distinguishable and outdated authority because the cases which served as a basis for *Tufco* have been rejected. *See Harford County v. Harford Mut. Ins. Co.*, 327 Or. 418, 610 A.2d 286 (Md. 1992). HCC maintains that the current trend among courts is to apply a "contract approach," relying on traditional rules of contract interpretation. *See, e.g., St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200 (Or. 1996). Third, HCC argues that because the words "discovery" and "manifestation" are noticeably absent from the policies, that the policies do not condition coverage on the discovery of damage. Fourth, HCC contends that because our Supreme Court has defined the leaching of contaminants as the event that constitutes an occurrence, the time when the leaching took place necessarily establishes when the occurrences took place. *See Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, *rehearing denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). HCC argues that their forecast of evidence demonstrates that the leaching occurred during the policy years. Accordingly, HCC contends that the Home policies were triggered and summary judgment was inappropriate.

Home argues that the "discovery rule" is clearly the rule in North Carolina. Home argues that because the damage was discovered after the policies expired, there can be no coverage. Home further argues that the occurrence language at issue in *Waste Management* was very different from the definition at issue here, and that the court in *Waste Management* never decided the "trigger of coverage" issue. In *Waste Management*, the policies at issue defined " 'occurrence' as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " *Id.* at 694, 340 S.E.2d at 379. Home maintains that the policy language at issue here differs materially, defining "occurrence" as "an event, or continuous or repeated exposure to conditions, which unexpectedly causes bodily injury or **property damage during the policy period.**" (Emphasis added). According to Home, "[t]iming of property damage is a crucial element of the 'occurrence' definition under the Home policies at issue here. In *Waste Management*, timing was not at issue." Additionally, Home argues that *Tufco* was decided five years after Waste *Management*, and "clearly stated that this issue had never been ruled on by an appellate court in North Carolina." Home also maintains that despite HCC's labeling of HCC's contentions as a "current trend," the

"discovery rule" is not antiquated and continues to be applied. *See CPC Intern., Inc. v. Northbrook Excess & Surplus Ins. Co.*, 668 A.2d 647 (R.I. 1995), *clarification denied*, 673 A.2d 71 (R.I. 1996). Finally, Home maintains that *Mraz*, relied upon by the *Tufco* court in adopting the discovery rule, has not been undermined and has continuing validity.

In *Tufco*, this court announced that "we now expressly adopt the *Mraz* 'date of discovery' rationale as the rule in North Carolina, and we hold that **for insurance purposes** property damage 'occurs' when it is first manifested or discovered." *Tufco*, 104 N.C. App. at 318, 409 S.E.2d at 696 (emphasis added). In adopting the discovery rule, the *Tufco* decision did not limit its holding to its facts or otherwise restrict its application to situations in which the occurrence date is unknown. The *Tufco* court determined that the discovery rule applies "for insurance purposes." *Id.* This Court is bound by *Tufco*. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In The Matter Of Appeal From Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

The latest policy at issue here expired on 1 January 1976. By HCC's own admissions to interrogatories, it is undisputed that the pollution was first discovered in 1980, well after expiration of the last Home policy. Accordingly, based on the *Tufco* rule, it is clear that there can be no coverage for environmental contamination claims under the 1972-76 Home policies. Accordingly, we conclude that summary judgment was properly granted here. Based on our disposition of this issue, we need not reach the remaining issues because they are now moot.

Accordingly, we affirm the trial court's order granting partial summary judgment for Home.

Affirmed.

Judges WYNN and MARTIN, Mark D., concur.