GASTON COUNTY DYEING MACHINE COMPANY, TAX I.D. NO. 56-02-32800, PLAINTIFF v. NORTHFIELD INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, ROSENMUND, INC., ALLENDALE MUTUAL INSURANCE COMPANY, STERLING WINTHROP, INC., AND STERLING PHARMACEUTICALS, INC., AND INTERNATIONAL INSURANCE COMPANY, DEFENDANTS AND UNITED CAPITOL INSURANCE COMPANY, INTERVENOR

No. COA97-1143

(Filed 1 December 1998)

**1. Insurance— general liability policies—products liability— date of occurrence—injury-in-fact rule**

The date of discovery of contamination of a medical diagnostic dye, rather than the earlier date when a pressure vessel ruptured and allowed contamination of the dye by a chemical used in the manufacturing process, was the proper date for determining when property damage occurred for purposes of coverage under occurrence-based commercial general liability policies insuring the manufacturer and designer of the pressure vessel.

**2. Reformation of Instruments— insurance policies—mutual mistake**

Primary and umbrella commercial general liability policies issued to the manufacturer of a pressure vessel were properly reformed on the ground of mutual mistake to provide products liability coverage for the vessel designer where the insurer's claims examiner testified that the phrase "additional insured on certificate without endorsement" as used in the insurer's records referring to the designer meant that the additional insured was entitled to coverage under the policy to the same extent as the named insured, and the insurer's representative and the designer understood that the policies provided products liability coverage for the designer.

**3. Insurance— excess liability policy—product manufacturer—coverage for product designer**

A pressure vessel manufacturer's excess liability policy provided products liability coverage for the vessel designer where

the excess policy followed the form of the primary policy and the primary policy was reformed to provide coverage for the designer.

**4. Insurance— general liability policy—product designer— primary rather than excess coverage**

A product designer's claims-made general liability policy was primary and not excess over all other insurance available to the designer through occurrence-based policies issued to the product manufacturer where the "Other Insurance" provisions of the policy provided that the coverage was excess only to other insurance that was effective prior to the beginning of the policy period, and the applicable policies issued to the manufacturer were not effective prior to the beginning of the designer's policy period.

Judge GREENE concurring.

Appeal by defendants Liberty Mutual and International Insurance Companies from order entered 3 February 1997 by Judge Julia V. Jones in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 June 1998.

*Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., by George A. Vaka and Tracy R. Gunn, and Yeats, McLamb & Weyher, by Barbara B. Weyher, for defendant-appellee Northfield Insurance Company.*

*Dean & Gibson, by Rodney Dean and Barbara J. Dean, for defendant-appellant Liberty Mutual Insurance Company.*

*Lustig & Brown, L.L.P., by James J. Duggan and Betty P. Balcomb, and Henson & Henson, L.L.P., by Perry Henson, Jr. and Paul M. Goodson, for defendant-appellant International Insurance Company.*

*Sedgwick, Detert, Moran & Arnold, by Sidney Rosen, and Golding, Meekins, Holden, Cosper & Stiles, L.L.P., by Harvey L. Cosper, Jr., for intervenor-appellee United Capitol Insurance Company.*

TIMMONS-GOODSON, Judge.

This appeal concerns the extent and priority of insurance coverage for products liability claims under primary, umbrella and excess

GASTON COUNTY DYEING MACH. CO. v. NORTHFIELD INS. CO.

[131 N.C. App. 438 (1998)]

general liability insurance policies issued to Gaston County Dyeing Machine Company (hereinafter "Gaston") and Rosenmund, Inc. (hereinafter "Rosenmund"). On 17 December 1992, Sterling Winthrop, Inc., Sterling Pharmaceuticals, Inc. and Allendale Mutual Insurance Co. filed an action (hereinafter "the Sterling action" or "the Sterling claims") in Puerto Rico alleging that a diagnostic dye produced by the pharmaceutical company was contaminated due to a leak in a pressure vessel designed by Rosenmund and manufactured by Gaston. In February 1994, Gaston brought this declaratory judgment action against Rosenmund, the Sterling plaintiffs, Liberty Mutual Insurance Company (hereinafter "Liberty"), Northfield Insurance Company (hereinafter "Northfield") and International Insurance Company (hereinafter "International"), seeking a judicial determination of the rights and responsibilities of the various insurance companies with respect to the Sterling claims. United Capitol Insurance Company (hereinafter "UCI") intervened, as an additional liability carrier for Rosenmund. The Sterling action was resolved by settlement agreement, and Gaston and Rosenmund dismissed their claims against the insurers. Thus, only the cross-claims among the several insurance carriers remained to be decided by the trial court. Liberty, International and UCI filed motions for summary judgment, and following a hearing, the trial court entered an order determining the priority of coverage as among the parties. The pertinent facts are as follows.

Sterling Pharmaceuticals utilized pressure vessels designed by Rosenmund and manufactured by Gaston in its process of manufacturing Iohexol, a pharmaceutical contrast dye medium used in medical diagnostic tests. When Sterling increased its operating pressure on 21 June 1992, the pressure vessels ruptured and caused ethylene glycol, a chemical used in the manufacturing process, to leak through the filter plates and contaminate the Iohexol. By the time Sterling discovered the problem on 31 August 1992, over 60 tons of Iohexol had been compromised.

From July 1991 through July 1993, Gaston carried a comprehensive general liability insurance program consisting of the following policies:

| Policy Period | Insurer | Policy Number | Limits | Attachment Level |
|---|---|---|---|---|
| 7/1/91-7/1/92 | Liberty primary | TB1-151-462594-031 | $1 million | $0 |
| | Liberty umbrella | TH1-151-462594-021 | $1 million | $1 million |
| | Northfield excess | XU-10019 | $5 million | $2 million |
| | Int'l excess | 531-204589-8 | $9 million | $7 million |

GASTON COUNTY DYEING MACH. CO. v. NORTHFIELD INS. CO.

[131 N.C. App. 438 (1998)]

| Policy Period | Insurer | Policy Number | Limits | Attachment Level |
|---|---|---|---|---|
| 7/1/92-7/1/93 | Liberty primary | TB1-151-462594-032 | $1 million | $0 |
| | Liberty umbrella | TH1-151-462594-022 | $1 million | $1 million |
| | Northfield excess | XU-10058 | $9 million | $2 million |
| | Int'l excess | 531-205637-4 | $5 million | $11 million |

The Liberty primary policies issued to Gaston are "occurrence-based" policies covering, *inter alia*, personal injury or property damage caused by an "occurrence." Under the terms of the policies, an "occurrence" is defined as an "accident, including continuous or repeated exposure to the same general harmful conditions," resulting in personal injury or property damage during the policy period. The Liberty umbrella, Northfield excess and International excess policies "follow the form" of the Liberty primary policies.

The Liberty primary policies for both policy years were endorsed with forms granting liability coverage to Rosenmund as an additional insured. In light of these endorsements, Rosenmund requested Liberty's defense in the Sterling action, and by letter dated 8 July 1993, Liberty advised Rosenmund that it would provide coverage and a defense. However, upon further review by Liberty's "in-house" counsel, Liberty determined that the additional insured endorsements only covered Rosemund for negligent supervision of Gaston's work, not products liability. Therefore, on 23 August 1993, Liberty withdrew its defense of Rosenmund.

Following Liberty's withdrawal, Rosenmund requested that UCI defend it under the terms of UCI's commercial general liability policy, number GLCM 200-15-21, effective 4 October 1991 to 4 October 1992. UCI issued this policy to Rosenmund under a "claims-made" basis, and it applied to claims reported during the policy period for property damage occurring after the policy's retroactive date, which, in this case, was 4 December 1986. UCI assumed Rosenmund's defense concerning the Sterling claims until 26 January 1996, when Liberty resumed Rosenmund's defense pursuant to a settlement agreement granting Rosenmund products liability coverage under the Liberty primary and umbrella policies. The excess carriers, Northfield and International, neither participated in nor approved of this agreement between Liberty and Rosenmund.

In June 1995, the various insurers agreed to fund a pool of settlement proceeds to settle Sterling's action for $11 million. Liberty contributed $2 million, Northfield contributed $5 million, International contributed $2 million and UCI contributed $2 million. Likewise, the

insurers agreed to reserve for judicial determination all remaining issues as to the appropriate trigger theory, the priority of coverage and the allocation of payment for the settlement of Sterling's claims.

By summary judgment motions, the insurers sought varying declarations as to the scope and order of insurance coverage for Gaston and Rosenmund. The relevant issues were (1) whether North Carolina or Puerto Rico law applied; (2) whether there were one or more occurrences involved in Sterling's claims; (3) whether Gaston's first policy year, second policy year or both years were triggered for payment; (4) whether Rosenmund was entitled to products liability coverage under Gaston's policies; and, if so (5) whether Rosenmund's own UCI policy was secondary to or concurrent with the Liberty, Northfield, and International policies. After argument on the summary judgment motions, the trial court entered an order declaring that North Carolina law applied to all of the issues in the present case; that there was a single "occurrence" on 21 June 1992 that triggered the coverage by Gaston's insurers; that the applicable policy period for the Liberty, Northfield and International policies was 1 July 1991 to 1 July 1992; that Gaston's primary and excess policies were "reformed" to afford Rosenmund full coverage with respect to the claims asserted in the Sterling action; and that Rosenmund's UCI policy was excess to all other coverage afforded Rosenmund under Gaston's primary and excess policies. From this order, International and Liberty appeal.

---

[1] By its first assignment of error, International argues that the trial court incorrectly applied the "injury-in-fact" theory to determine the event triggering coverage as to Sterling's claims. International contends that pursuant to our decision in *West American Insurance Co. v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), the "date-of-discovery" or "manifestation" rule is the law in North Carolina for determining when property damage occurs for insurance purposes. International's contention is correct.

*Tufco* involved the contamination of Purdue chicken products due to the leakage of floor resurfacing chemicals. Tufco performed floor resurfacing work in certain areas of the Purdue chicken processing facility. While the work was underway, chicken products were being stored in a cooler adjacent to one of the areas being resurfaced. The day after the resurfacing work was completed, Purdue shipped the chicken that had been stored in the cooler to various customers. Upon receipt of the shipment, Purdue's customers notified

Purdue that there was a problem with the smell and taste of the chicken. Subsequent chemical testing revealed that the chicken contained styrene, one of the chemicals used by Tufco in the floor resurfacing work.

Tufco had in effect a commercial liability policy through West American Insurance Company providing coverage for "completed operations," the scope of which included all property damage occurring away from premises owned by the insured and arising out of the insured's work, provided that the work was completed before the property damage occurred. West American took the position that because the contamination of the chicken "occurred," for insurance purposes, before Tufco's work had been completed, the "completed operations" coverage did not extend to Purdue's claim. This Court, however, rejected that argument and expressly adopted the "date of discovery" rule articulated in *Mraz v. Canadian Universal Ins. Co., Ltd.*, 804 F.2d 1325 (4th Cir. 1986), which provides that "for insurance purposes property damage 'occurs' when it is first manifested or discovered." *Tufco*, 104 N.C. App. at 318, 409 S.E.2d at 696. Applying this rule, the Tufco court affirmed the trial court's determination that the damage suffered by Purdue "occurred" two days after the floor resurfacing work was done, when customers informed the company that the chicken had a peculiar smell and taste.

The "date of discovery rule" likewise applies to the facts of the present case, because "[i]n adopting the discovery rule, the *Tufco* decision did not limit its holding to its facts or otherwise restrict its application to situations in which the occurrence date is unknown." *Home Indemnity Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 259, 264, 494 S.E.2d 764, 767, *disc. review denied*, 348 N.C. 71, —— S.E.2d —— (1998). In the complaint filed against Gaston and Rosenmund, Sterling alleged that it increased the operating pressure on 21 June 1992 as part of a change in the manufacturing process. The complaint further alleged that on 31 August 1992, Sterling discovered that ethylene glycol had leaked into one of the pressure vessels and contaminated the Iohexol diagnostic dye. According to Sterling, the contamination began on 21 June 1992, when one of the pressure vessels produced by Rosenmund and Gaston ruptured, and continued until it was discovered on 31 August 1992. As a result, more than 60 tons of Iohexol were damaged.

Under our holding in *Tufco*, 104 N.C. App. 312, 409 S.E.2d 692, property damage "occurs," for insurance purposes, "when it is first

manifested or discovered." *Id.* at 318, 409 S.E.2d at 696. Hence, for purposes of the occurrence-based policies at issue in this case, the damage to the Iohexol "occurred" when Sterling discovered it on 31 August 1992, triggering the policies for the period 1 July 1992 to 1 July 1993. We, therefore, hold that the trial court erred in concluding that the damage to Sterling's property occurred when the pressure vessel ruptured on 21 June 1992 and that the policies for the period 1 July 1992 to 1 July 1993 did not apply. In light of this holding, we need not address International's second assignment of error challenging the trial court's refusal to allocate the latent and continuous property damage over the two consecutive policy years when applying the "injury-in-fact" trigger of coverage theory.

[2] We proceed, then, to International's next assignment of error, whereby it argues that the trial court improperly determined that Rosenmund was an additional insured under the International excess policy, because International did not engage in any conduct that would estop it from denying coverage to Rosenmund. We, however, uphold the trial court's decision, because reformation of the Liberty policies was appropriate under the facts of this case.

" 'Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement.' " *Metropolitan Property and Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (quoting *Dettor v. BHI Property Co.*, 91 N.C. App. 93, 95-96, 370 S.E.2d 435, 437 (1988), *rev'd on other grounds*, 324 N.C. 518, 379 S.E.2d 851 (1989)). A mutual mistake is one shared by both parties to the agreement, such that each party operates under a misunderstanding as to the terms of the contract or the provisions of the writing intended to embody the agreement. *Id.* Reformation is appropriate to effectuate the intended terms of the agreement, provided that "clear, cogent, and convincing" evidence was presented to show that the parties intended the terms as reformed. *Id.* (citing *Dettor*, 91 N.C. App. at 96, 370 S.E.2d at 437).

In this case, "clear, cogent, and convincing evidence" existed to support the trial court's conclusion that the Liberty policies as written did not accurately reflect the true intent of the parties regarding the coverage to be afforded Rosenmund. For instance, Linda Mensching, the Claims Examiner who handled the Sterling action, testified that the phrase "additional insured on certificate without

endorsement," as used in Liberty's records to refer to Rosenmund respecting Gaston's general liability coverage policies, meant that the additional insured, although not endorsed onto the policy, was named on a certificate of insurance entitling that entity to coverage under the policy to the same extent as the named insured. Additionally, Brian Kelly, the Liberty representative purported to be the most knowledgeable about Rosenmund's status as an additional insured under the policies, when questioned concerning the coverage Liberty intended to provide Rosenmund, stated that it was his understanding that Rosenmumd was to be insured for products liability and premises liability. This understanding is identical to that of Rosenmund's president, Richard Hoard, who testified that he understood Rosenmund to have products liability coverage as well as $1 million coverage under the umbrella excess policy issued by Liberty to Gaston. In view of these facts, reformation of the Liberty policies to provide Rosenmund with products liability coverage was appropriate, and the trial court's ruling in this regard was not error.

[3] Furthermore, since International's excess policy follows the form of Liberty's primary and umbrella policies, the trial court correctly concluded that Rosenmund is an additional insured under the International policy as well. Liberty's umbrella excess policy pertinently provides as follows with regard to "Who is an Insured":

Each of the following is also an insured:

. . . (e) any other insured included in or *added in an underlying policy* but not for broader coverage than is available to such insured under the underlying policy. However, if such other insured is so included or *added* pursuant to written agreement to provide insurance, then this policy applies to its scope coverage and limits of insurance required by such written agreement. (emphasis added).

By reformation, Rosenmund has been added as an insured under the Liberty policies. Because International's policy adheres to the provisions of Liberty's policies, the trial court did not err in concluding that Rosenmund is entitled to full coverage under the International excess policies. This assignment of error, therefore, fails.

[4] Next, International and Liberty assign error to the trial court's conclusion that the UCI policy is excess over all other coverage available to Rosenmund. Inasmuch as the terms of the UCI policy, as

applied to the facts of this case, obligate UCI to provide primary insurance coverage to Rosenmund, we conclude that the trial court erred and reverse the order accordingly.

"Under North Carolina law 'the construction and application of the policy provisions to the undisputed facts is a question of law for the court,' " *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 686, 443 S.E.2d 357, 359 (1994) (quoting *Walsh v. National Indemnity Co.*, 80 N.C. App. 643, 647, 343 S.E.2d 430, 432 (1986)), and thus, is reviewable de novo on appeal, *Al Smith Buick Co. v. Mazda Motor of America*, 122 N.C. App. 429, 470 S.E.2d 552 (1996). Insurance policies are contracts between the insurer and the insured. *Metropolitan Prop. and Casualty Ins. Co. v. Lindquist*, 120 N.C. App. 847, 851, 463 S.E.2d 574, 576 (1995). As such, the intent of the parties, as expressed in the plain language of the policy, controls in determining the application and construction of its terms. *Id.* "Where the policy language is clear and unambiguous, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written." *Cone*, 114 N.C. App. at 687, 443 S.E.2d at 359.

United Capitol's "Other Insurance" provision pertinently states the following:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this insurance, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

(1) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:

. . .

GASTON COUNTY DYEING MACH. CO. v. NORTHFIELD INS. CO.

[131 N.C. App. 438 (1998)]

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance.

. . .

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

There is no dispute in this case that the relevant claims were made during the pendency of the UCI policy. Furthermore, under the express terms of the policy's "Other Insurance" provision, the UCI policy is excess only to other insurance that was "effective prior to the beginning of the policy period shown in the Declarations." As we previously held, the 1 July 1992 to 1 July 1993 Liberty, Northfield and International policies apply to the Sterling claims, and since this "other insurance" was not effective prior to 4 October 1991 (the beginning of United Capitol's policy period), the "Excess Insurance" provision of United Capitol's policy is inapplicable. The trial court, therefore, erred in concluding that the United Capitol policy is excess over all other coverage available to Rosenmund and in ordering Liberty and International, respectively, to reimburse United Capitol for the costs of defending Rosenmund in this action and for the amount of its settlement contribution. Because of our decision in favor of Liberty and International, we need not address their remaining assignments of error.

In sum, we affirm that portion of the trial court's order reforming the primary and excess policies covering Gaston so as to afford Rosenmund full coverage regarding the Sterling claims. We, however, reverse that portion of the order (1) applying the "injury-in-fact" rule, rather than the "date-of-discovery" rule, in determining when the damage to Sterling's property occurred; (2) determining that the applicable policy period for the Liberty, Northfield, and International policies was 1 July 1991 to 1 July 1992, rather than 1 July 1992 to 1

July 1993; and (3) concluding that the UCI policy was excess to all other coverage available to Rosenmund. This case is, therefore, remanded for entry of an order consistent with this opinion.

Reversed in part, affirmed in part, and remanded.

Judge MARTIN, Mark D., concurs.

Judge GREENE concurs in the result with a separate opinion.

Judge GREENE concurring.

The first issue addressed by the majority is whether the policies in issue require the loss to be determined on the date of its discovery or on the date the damage is sustained. The majority holds that this Court has previously answered that question in favor of the "date of discovery" rule, citing *West American Insurance Co. v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), *disc. review improvidently allowed*, 332 N.C. 479, 420 S.E.2d 826 (1992). I do not read *Tufco* that broadly. I read that case as holding that when the actual date of damage cannot be determined, the loss will be deemed to have occurred on the date of its discovery. Indeed, the primary case relied on in the *Tufco* opinion, *Mraz v. Canadian Universal Ins. Co., Ltd.*, 804 F.2d 1325 (4th Cir. 1986), appears to limit the "date of discovery" rule to those instances where the determination of the date of the damages is "difficult." Furthermore, to read the "date of discovery" rule into every policy of insurance, regardless of the language used in the policy, would be inconsistent with the law requiring that disputes be resolved in accordance with unambiguous contracts freely entered into between the parties. *See Williams v. P.S. Investment Co.*, 101 N.C. App. 707, 709, 401 S.E.2d 79, 80 (1991) ("If the terms of a contract are plain and unambiguous, there is no room for construction and the contract will be enforced according to its terms.").

Nevertheless, this Court has recently given a very broad construction to *Tufco*, appearing to hold that the "date of discovery" rule is to be used in every insurance case to determine when property damage "occurs," regardless of the language of the policy and even in those situations when the date of the loss is known. *Home Indemnity Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 189, ——, 494 S.E.2d 764, 767 (1998). I am bound by that holding, *see In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), and for that reason join with the majority.