STATE OF NORTH CAROLINA
v.
BOBBY EARL HINES
No. COA09-202
Court of Appeals of North Carolina
Filed September 15, 2009
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General V. Lori Fuller, for the State.
James N. Freeman, Jr., for defendant-appellant.
STEELMAN, Judge.
Where there was competent evidence in the record to support the trial court's findings of fact, the trial court did not err in denying defendant's motion to suppress. The trial court did not abuse its discretion in denying defendant's motion for a mistrial where the testimony in question did not refer to defendant. Where defendant left Union County after the robbery, was found three months later in Martin County, and had changed his appearance, the trial court properly instructed the jury on flight.

I. Factual and Procedural Background
On 2 January 2007, Amanda Purser (Amanda) and Michael Summerford (Summerford) were at the home of Jackson Purser (Purser), Amanda's father, when two armed men burst into the home. One of the men forced Summerford to lie down on the floor while the other man removed items from a bedroom. Amanda pleaded with them to leave before Summerford eventually convinced her to lie down beside him. The men left the home with a purse, a bag of coins, a cell phone, a shotgun, and a safe, which contained $10,200 in cash and car titles.
Shortly after the robbery, Amanda and Summerford gave descriptions of the robbers to deputies. Amanda and Summerford described the robbers as a light-skinned black or Hispanic male and a black male wearing a hooded sweatshirt. Amanda called her father as he was returning home and told him that one of the robbers had long locks of hair. Purser suggested that one of the robbers might be Antonio Chavis (Chavis). Amanda then found a picture of Chavis on the Internet.
When Detective Scott Stroud (Detective Stroud) showed her a picture of Chavis in a lineup that did not include defendant, she told Detective Stroud "that's him" and that she had seen a picture of him on the Internet. Detective Stroud decided that the lineup identification was "tainted" and did not show the lineup to Summerford. After an informant told investigators that she overheard defendant and another man discussing the robbery and gave police an accurate location of the safe and the shotgun, a new photographic lineup was shown to Summerford that included a picture of defendant but not a picture of Chavis. Summerford identified defendant, saying that he was "definitely" one of the robbers. Chavis produced a time sheet showing that he was working at the time of the robbery, which was confirmed by his workplace manager.
Defendant was charged and subsequently indicted for the crimes of robbery with a dangerous weapon, first-degree burglary, larceny of a firearm, and safecracking. Defendant was arrested approximately three months later in Martin County after he changed his physical appearance and began driving a different vehicle. On 11 September 2008, a jury found defendant guilty of all four charges. The robbery and larceny charges were consolidated, and defendant was sentenced to an active prison term of 103-133 months. The first-degree burglary and safecracking charges were also consolidated, and defendant was sentenced to a consecutive active prison term of 103-133 months.
Defendant appeals.

II. Denial of Motion to Suppress
In his first argument, defendant contends that the trial court erred by denying his motion to suppress evidence of Summerford's photographic lineup identification. We disagree.

A. Standard of Review
The standard of review for determining whether a trial court erred in its ruling on a motion to suppress is "strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." State v. Corpening, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993) (citing State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982); State v. Fleming, 106 N.C. App. 165, 168, 415 S.E.2d 782, 784 (1992)).

B. Contested Findings of Fact
The United States Supreme Court has ruled that admitting unnecessarily suggestive photographic lineups into evidence violates a defendant's constitutional right to due process of law. Simmons v. United States, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253 (1968) (citation omitted). To prevent such a violation, the North Carolina Supreme Court has enumerated the factors that a trial court must consider when determining whether a substantial likelihood of misidentification exists: "1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation." State v. Pigott, 320 N.C. 96, 99-100, 357 S.E.2d 631, 633-34 (1987) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 53 L.Ed.2d 140, 154 (1977)).
Defendant challenges findings of fact numbers eleven, twelve, thirteen, fourteen, and fifteen, which read as follows:
(11) the witness Summerford has been  had been in relatively close proximity to the perpetrators at the time of the crime.
(12) although the perpetrators were wearing hoodies, their facial features were visible.
(13) the length of time between the crime and the identification was short.
(14) there were no suggestive statements made by another witness or other person or law enforcement about the accused before, during or after the identification procedure.
(15) the sex, age, . . . weight, hair color and style and distinguishing features of other persons in the lineup compared to those of the accused were all similar. . . . There was no event or circumstance, "singling" out the accused.
As to findings of fact numbers eleven and twelve, Summerford and Amanda testified that one of the two perpetrators pointed a gun at him, forced him to lie on his stomach, and hovered over him with the gun pointed at him. Although Summerford has difficulty seeing things more than fifteen feet away without his glasses and was not wearing them the night of the robbery, he testified that he was within nine to eleven feet of the second perpetrator, whom he identified as defendant, and got a good look at him for five to ten seconds. Summerford also testified that the hooded sweatshirts of the perpetrators did not cover their faces. Competent evidence in the record supports findings of fact numbers eleven and twelve.
As to finding of fact number thirteen, defendant contends that the trial court incorrectly found that the ten-day period between the crime and Summerford's photographic lineup identification of the defendant was a "short" period of time. We reject defendant's argument and hold that ten days is not an excessive period of time between a crime and an identification.
As to finding fourteen, there were no suggestive statements made by any other witness, person, or law enforcement about the accused before, during, or after the identification procedure. Defendant argues that Amanda, Summerford, and Purser's use of the Internet to find a picture of Chavis after the crime prevented them from making an accurate identification because it gave them a preconceived idea of what defendant was supposed to look like. However, defendant does not cite evidence that the Internet research yielded any results related to himself, that he became a topic of conversation among the three, or that seeing a picture of Chavis made Summerford's subsequent identification of defendant less valid. As a result, this finding will not be disturbed.
As to finding of fact fifteen, defendant argues that because Chavis was initially named as a suspect by Purser and, like defendant, Chavis had dreadlocks, it was unduly suggestive not to include Chavis in the photographic lineup shown to Summerford. The five other men in the photographic lineup shown to Summerford looked similar to defendant because they were young black males with dark dreadlocks. Summerford identified defendant as "definitely" being the man who robbed him despite the fact that all the men pictured in the lineup had similar features.
These findings, together with the findings unchallenged by defendant on appeal, support the trial court's conclusions of law that Summerford's identification of defendant through the photographic lineup was not impermissibly suggestive and did not violate any of defendant's constitutional rights.

III. Denial of Motion for Mistrial
Defendant next argues that the trial court erred by denying his motion for mistrial after Detective Baker mentioned a "more serious matter" that he was investigating during direct examination by the State. We disagree.

A. Standard of Review
North Carolina law requires a trial court to "declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2007). For the trial court's ruling on a motion for mistrial to be overturned, defendant must show an abuse of discretion. State v. Barts, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986) (citing State v. Primes, 314 N.C. 202, 215, 333 S.E.2d 278, 286 (1985)).

B. Discussion
Prior to trial, the presiding judge instructed that there was to be no mention of the investigation of other charges involving defendant. Detective Baker went to the residence of Brandon Williams in the course of his investigation of the Purser robbery. Detective Baker was asked, "Were you able to talk to Brandon Williams that day?" Detective Baker's response was: "No ma'am. Not this  it was later on a more serious matter when I was able to speak with him."
Defendant contends that Detective Baker's response violated the trial court's admonition and caused "substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2007). We note that Detective Baker's answer pertained to a conversation with Brandon Williams, not with defendant. There is no implication in the record that the "more serious matter" pertained to defendant. Defendant can show no prejudice, and we hold that the trial court did not abuse its discretion in denying the motion for mistrial.
This argument is without merit.

IV. Flight Instruction
In his final argument, defendant contends that the evidence did not warrant the trial court's instruction on flight. We disagree.

A. Standard of Review
The issue of whether a jury instruction correctly explains the law is a question of law. This Court reviews questions of law de novo. Staton v. Brame, 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999) (citing Al Smith Buick Co. v. Mazda Motor of America, 122 N.C. App. 429, 433, 470 S.E.2d 552, 554, cert. denied and disc. review denied, 343 N.C. 749, 473 S.E.2d 609 (1996)). Because defendant objected to the flight instruction, he is required to show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007).

B. Discussion
Defendant argues that there was insufficient evidence submitted at trial to support a flight instruction. Our Supreme Court has held that a trial judge may not instruct a jury on defendant's flight unless "`there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.'" State v. Levan, 326 N.C. 155, 164-65, 388 S.E.2d 429, 434 (1990) (quoting State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). Mere evidence that defendant left the crime scene is inadequate to support a flight instruction. Such evidence must be accompanied by evidence that defendant took steps to avoid apprehension. Id.
The prosecution presented evidence of both factors. Defendant left his home in Union County and was arrested almost three months later in Martin County, which is a five and a half-hour drive from where the crime took place. A witness who frequently associated with defendant testified that shortly after the crime, he grew out his facial hair, although she had previously always seen him with a cleanly shaven face. The State also presented evidence that defendant began driving a different car just after the crime.
This Court has ruled that when a defendant left a crime scene in North Wilkesboro and stayed in Winston-Salem for two and one-half weeks, a flight instruction was proper. State v. Moxley, 78 N.C. App. 551, 556-57, 338 S.E.2d 122, 125 (1985), disc. review denied, 316 N.C. 384, 342 S.E.2d 904 (1986). Our Supreme Court upheld a flight instruction after a defendant shaved off his beard and mustache within two days of a murder in Catawba County and was found in Texas three years later. State v. Tucker, 329 N.C. 709, 722-23, 407 S.E.2d 805, 813-14 (1991).
In the instant case, the State presented evidence that defendant left Union County shortly after the robbery and was arrested in Martin County three months later. At the time of his arrest, he had changed his appearance by growing facial hair. Defendant also started driving a different car shortly after the crime. This evidence was sufficient to support the submission of a flight instruction to the jury. This argument is without merit.
NO ERROR.
Judges McGEE and JACKSON concur.
Report per Rule 30(e).